Filed 1/22/14

CERTIFIED FOR PARTIAL PUBLICATION[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| STEVE AHN et al., | |
| Plaintiffs and Appellants, | E054322 |
| v. | (Super.Ct.No. CIVRS1004820) |
| KUMHO TIRE U.S.A., INC. et al., | O P I N I O N |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County. Barry L. Plotkin, Judge. Reversed in part and affirmed in part.

Kim, Shapiro, Park, Lee & Ryu, Paul Park, and Yalan Zheng for Plaintiffs and Appellants.

Lim, Ruger & Kim, Bruce G. Iwasaki, and Arnold Barba for Defendants and Appellants.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV.B. and IV.C.

## I.  INTRODUCTION

The trial court granted summary judgment in favor of defendants Kumho Tire, U.S.A., Inc. (Kumho) and Korea Express U.S.A., Inc. (Korea Express) on plaintiffs' unverified complaint for breach of contract and common counts.  The motion was based on plaintiffs' "factually devoid" responses to defendants' "state all facts" special interrogatories and requests for production in which plaintiffs generally stated *they did not know* whether any facts or documents supported various allegations of their complaint.  (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 580-581 [motion for summary judgment may be based on discovery responses indicating the plaintiffs have no evidence to support their claims]; Code Civ. Proc., § 437c, subd. (p)(2).)[1]

In opposing the motion, plaintiff Steven Ahn, the sole owner and principal of plaintiff New Star, Inc., adduced a declaration explaining the evidentiary basis of plaintiffs' claims.  Plaintiffs also adduced amended responses to their initial discovery responses along with a declaration by plaintiffs' counsel explaining that the initial discovery responses were "a mistake."  The trial court granted the motion after disregarding substantially all of the statements of fact in Ahn's declaration on the ground they were inconsistent with plaintiffs' initial discovery responses.  The trial court relied on *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22-23 (*D'Amico*), which held that a party's statements of fact adduced on a motion for summary judgment must be

---

[1]  All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

disregarded as insubstantial or incredible to the extent they contradict the party's prior "clear and unequivocal admissions" of fact.

As we explain, this was an overly broad and erroneous application of the *D'Amico* rule.  In light of all the evidence adduced on the motion, a reasonable trier of fact could have credited counsel's explanation that the discovery responses were a mistake and found the contradictory statements in Ahn's declaration credible.  (*Mason v. Marriage & Family Center* (1991) 228 Cal.App.3d 537, 546 (*Mason*).)  Thus, plaintiffs' discovery responses were not "clear and unequivocal admission[s]" of fact which, in light of all the evidence adduced on the motion, could not be credibly contradicted or amended.  (*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482, overruled on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1179-1182.)

In the unpublished portion of this opinion, we explain why all of the papers on the motion show there are triable issues of fact on plaintiffs' claims.  We therefore reverse the judgment in favor of defendants.  We affirm a postjudgment order denying defendants' motion for sanctions against plaintiffs and their counsel for allegedly filing a complaint without evidentiary support.  (§ 128.7, subd. (b)(3).)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when all of the papers submitted show there are no triable issues of any material fact and the moving party is entitled to a judgment as a matter of law.  (§ 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826,

3

843.)  "'The purpose of a summary judgment proceeding is to permit a party to show that *material* factual claims arising from the pleadings need not be tried because they are not in dispute.'  [Citations.]"  (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 168; see § 437c, subd. (a).)

A defendant moving for summary judgment has the burden of showing the plaintiff's causes of action have no merit.  (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at pp. 849-850.)  A defendant meets this burden if it makes a prima facie showing that one or more elements of each cause of action cannot be established or is subject to a complete defense.  (*Id.* at p. 849.)  If the defendant makes this showing, the burden shifts to the plaintiff to produce evidence demonstrating the existence of a triable issue of material fact.  (*Id.* at pp. 849-850; § 437c, subd. (p)(2).)

We review the entire record de novo, considering "'all the evidence set forth in the moving and opposition papers[,]' . . ."  (*Blanco v. Baxter Healthcare Corp.* (2008) 158 Cal.App.4th 1039, 1046.)  We disregard evidence to which a sound objection was made but consider any evidence to which no objection or an unsound objection was made. (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 957, citing *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)

"'[W]e strictly construe the moving party's evidence and liberally construe the opposing party's and accept as undisputed only those portions of the moving party's evidence that are uncontradicted.'  [Citation.]  '. . . "Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that

4

allows the future development of the case and avoids errors."' [Citation.]" (*Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1519 (*Scalf*).)

### III. BACKGROUND

A. *The Evidence Adduced on the Motion for Summary Judgment*[2]

Ahn, a former truck driver, is the sole owner and president of New Star Transport, Inc. (New Star), a trucking services company. Kumho is the American distribution arm of Kumho Tire Company, an international tire manufacturer. Sometime during 2008, Kumho "outsourced" its entire logistics department to Korea Express.

In 2005, Ahn began providing consulting and trucking services to Kumho without a written agreement. In December 2006, New Star and Kumho entered into a written "dedicated fleet trucking services" agreement whereby New Star made available to Kumho a certain number of trucks, trailers, and drivers in exchange for weekly fees. The 2006 agreement had a one-year term with automatic one-year extensions and could be terminated by either party on 30 days' notice.

In March 2008, New Star and Kumho entered into a successor "dedicated fleet operations" agreement requiring New Star to make available "for the exclusive use" of Kumho no fewer than eight trucks, eight drivers, and 16 trailers. Under the 2008 agreement, Kumho agreed to pay New Star "Fixed Charge[s]" of $1,196 per week for

---

[2] The facts are based on all of the evidence adduced on the motion for summary judgment, except evidence to which a sound objection was made, but including Ahn's declaration, which we conclude was erroneously disregarded under the *D'Amico* rule. (See *McCaskey v. California State Automobile Assn., supra,* 189 Cal.App.4th at p. 957.)

each dedicated truck, plus additional charges based on miles driven, fuel, and unloading. New Star agreed to invoice Kumho on a weekly basis for all charges due under the 2008 agreement. The 2008 agreement states its term "will be for a minimum of three (3) years with a 90-day cancellation option for Kumho Tires or New Star after 1 year," but the "after 1 year" clause is crossed out and initialed by the signatories.

According to Ahn, he and Mike Newman, Kumho's transportation manager, discussed the term and termination clause before they signed the 2008 agreement and agreed that terminating the agreement on 90 days' notice after one year or at anytime within the three-year term was inconsistent with the agreement's three-year term. To confirm their understanding that the 2008 agreement could not be terminated until after its three-year term expired, Ahn and Newman initialed and crossed out the "after 1 year" clause. New Star performed its obligations under the 2008 agreement by providing Kumho with the dedicated trucks, trailers, and drivers.

Chong Ha Nam was employed by Kumho from 1985 to 2008. When he left Kumho in 2008, Nam was its senior manager for logistics, responsible for overseeing the distribution and transportation of Kumho tires. Nam negotiated and signed the December 2006 agreement on behalf of Kumho and was in charge of overseeing New Star's performance of the 2008 agreement. According to Nam, sometime during 2008 Kumho "outsource[d] its logistics department" to Korea Express. Nam then stopped working for Kumho and became the branch manager for Korea Express in Rancho Cucamonga. According to Ahn, in January 2009, Kumho's logistics department began using the name

6

Korea Express with "the same group of people working at the same office at [the] same location . . . ."

In April 2008, Kumho notified New Star it was reducing the number of dedicated trucks it would be using from eight to six, and in October 2008, it notified New Star it was further reducing the number of trucks from six to four. According to Nam, New Star "acquiesced" in the reductions because they were "necessitated by the level of business," and Ahn did not object to Nam concerning the fleet reductions. Ahn claims neither he nor New Star ever agreed to the fleet reductions.

New Star invoiced Kumho for all trucks dedicated to Kumho pursuant to the 2008 agreement, including the unused trucks. Kumho refused to pay the invoices for the unused trucks; required Ahn to submit separate invoices for the used and unused trucks; and paid only the invoices for the trucks it used. Ahn claims he asked Nam about the unpaid invoices "on numerous occasions" and Nam told him Kumho would pay the invoices for the unused trucks "when the business got better."

In a December 29, 2008, letter to Ahn at New Star, Nam advised that Kumho was outsourcing its warehouse and logistics operations to another company (apparently Korea Express) effective January 1, 2009, and Kumho was giving 30 days' notice of its intent to terminate *the December 2006 agreement*. The letter does not mention the 2008 agreement, but according to Nam, he met with Ahn in January 2009 to discuss the termination of "the contract" and Ahn agreed "the contract" would terminate on June 15, 2009. Ahn denies he met with Nam during January 2009 and also denies he agreed the

7

2008 agreement was or could be terminated before its three-year term expired or on 30 days' notice.

New Star continued to provide trucks to Korea Express during 2009. Finally, on August 28, 2009, Korea Express terminated the 2008 agreement on 30 days' notice effective September 30, 2009, approximately 78 weeks before its three-year term expired.[3] Ahn claims New Star is owed $746,304 for all trucks dedicated to Kumho and Korea Express pursuant to the 2008 agreement based on the $1,196 weekly rate. Of the $746,304 sum, $301,392 is due and unpaid for trucks *used* by Kumho or Korea Express through September 30, 2009.

In his declaration, Ahn claims Kumho approached him during 2007 about placing "Kumho Tires" advertising signs on all trailers operated by New Star, including trailers not dedicated to or used by Kumho. Around July 2007, Mr. Chu Hwan Kim of Kumho and Ahn orally agreed that Kumho would pay New Star $1,000 per month per trailer for the advertising, and Kumho had "Kumho Tires" placed on all 40 of New Star's trailers.

---

[3] In his declaration, Nam averred that S.H. Kim of Korea Express met with Ahn on July 24, 2010 (apparently Nam meant July 24, 2009), and during that meeting Ahn confirmed that "the agreement" between Kumho and New Star could be terminated on 30 days' notice. Plaintiffs objected to Nam's statement on hearsay grounds (Evid. Code, § 1200), and the objection was properly sustained. Nam purported to introduce an out-of-court statement by S.H. Kim concerning what Ahn said during the July 24 meeting for the truth of the statement. (*Ibid.*) We therefore disregard this portion of Nam's declaration. (*McClaskey v. California State Automobile Assn., supra,* 189 Cal.App.4th at p. 957.) For his part, S.H. Kim said nothing in his declaration about any July 2009 or July 2010 meeting with Ahn or any agreement by Ahn that the 2008 agreement could be terminated on 30 days' notice.

8

According to Ahn, $1 million is due for the Kumho Tires advertising placed on New Star trucks from July 2007 to August 2009.

B. *The Allegations of the Complaint*

In May 2010, Ahn and New Star filed an unverified complaint against Kumho and Korea Express alleging five causes of action: (1) against both defendants for breach of the 2008 agreement (first); (2) against Korea Express for breach of an oral agreement to assume the 2008 written agreement (second); (3) against both defendants for breach of a 2007 oral agreement to pay New Star $1,000 per month to place "Kumho Tires" advertising on 40 New Star trailers (third); and (4) against both defendants for common counts and quantum meruit (fourth and fifth).

As indicated, the allegations of the complaint are fairly detailed and are entirely consistent with Ahn's declaration. The complaint explains the origins of the 2006 and 2008 agreements, their terms and termination clauses; alleges Kumho reduced the dedicated fleet from eight trucks to six in April 2008 and from six trucks to four in November 2008; alleges on information and belief that sometime after the 2008 agreement was signed Korea Express assumed all of Kumho's business operations, including its obligations under the 2008 agreement; and alleged Korea Express unilaterally terminated the 2008 agreement on 30 days' notice in August 2009, before its three-year term expired. The complaint further alleges that in 2007 Kumho approached plaintiffs about placing advertising signs on plaintiffs' trailers and agreed to pay plaintiffs

9

$1,000 per month per trailer, due to the increased risk of theft resulting from the placement of the advertising signs.

The complaint seeks $765,440 in damages from both defendants for their alleged breach of the 2008 agreement (first cause of action); the same amount in damages from Korea Express for its breach of an alleged oral agreement to assume Kumho's obligations under the 2008 agreement (second cause of action); and an additional $1 million from both defendants for their breach of the alleged 2007 oral agreement to pay New Star $1,000 per month per trailer for placing advertising on all New Star trucks (third cause of action). Plaintiffs seek both amounts, or $1,765,440, from defendants in their fourth and fifth causes of action for common counts and quantum meruit. Attached as exhibits to the complaint are copies of the 2006 and 2008 agreements and photographs showing "Kumho Tires" advertising on New Star trucks.

C. *Plaintiffs' "Factually Devoid" Discovery Responses*

Defendants answered the May 2010 complaint in July 2010. In October 2010, plaintiffs responded to defendants' "state all facts" special interrogatories and requests for production. Most of the discovery was directed to the allegations of the complaint. For example, one interrogatory asked Ahn and New Star to state all facts supporting their allegation that "there is now owing and due from defendants the sum of at least $1,765,440.00 . . . ." Each plaintiff responded: "At this time, responsive party does not know whether any facts responsive to this request exist. Discovery is continuing." Yet the complaint itself explained that plaintiffs were seeking $765,440 for trucks dedicated

10

to defendants pursuant to the 2008 agreement but not paid for, and $1 million for Kumho's breach of the alleged 2007 oral advertising agreement.

Plaintiffs gave similar "we don't know" and "discovery is continuing" responses to defendants' other "state all facts" special interrogatories and production requests. In December 2010, plaintiffs supplemented some of their interrogatory responses and agreed to produce some additional invoices and other documents, but they did not change most of their original responses indicating they did not know whether any responsive facts or documents existed. In a December 23, 2010, e-mail to plaintiffs' counsel, defendants' counsel summarized the parties' "meet and confer" or discussion concerning plaintiffs' original and first amended responses. In the e-mail, defendants' counsel asserted plaintiffs would "be bound by their original responses," together with their "admissions" that they did not know whether any responsive facts or documents existed.[4]

---

[4] Despite the parties' "meet and confer" discussion and defendants' apparent belief that plaintiffs' original and first amended interrogatory responses were incomplete or evasive, defendants did not move for an order compelling further responses to the interrogatories. (§ 2030.300.) Nor did defendants move for an order deeming plaintiffs bound by their original or their first amended interrogatory responses after those responses were amended. (§ 2030.310, subd. (b) [party propounding interrogatory to which an amended answer has been served may move for an order deeming the responding party bound by its initial response].) Thus, defendants' unilateral assertion that plaintiffs were "bound by" their original and first amended responses was without legal support (§ 2030.310, subds. (b)-(c)), and the second amended responses that plaintiffs submitted along with their opposition to the summary judgment motion were permissible and should have been considered, along with the other evidence adduced on the motion (§ 2030.310, subd. (a) ["Without leave of court, a party may serve an amended answer to any interrogatory that contains information subsequently discovered, inadvertently omitted, or mistakenly stated in the initial interrogatory. At the trial of the action [or any other hearing in the action] the propounding party . . . may use the initial

*[footnote continued on next page]*

11

D.  *Defendants' Motion for Summary Judgment and Motion for Sanctions*

In March 2011, defendants moved for summary judgment without deposing Ahn, even though the complaint indicated he had personal knowledge of the factual bases of plaintiffs' claims as alleged in the complaint.  Based on plaintiffs' "factually devoid" responses to defendants' "state all facts" special interrogatories and requests for production, defendants argued plaintiffs admitted their causes of action "lacked any factual basis."  (See *Union Bank v. Superior Court, supra,* 31 Cal.App.4th at p. 593 [motion for summary judgment may be based on discovery responses indicating the plaintiffs have no evidence to support their claims]; *Andrews v. Foster Williams LLC* (2006) 138 Cal.App.4th 96, 106-107 [the plaintiffs' nonresponsive answers to comprehensive special interrogatories in effect admitted the plaintiffs had no further information].)  The motion also claimed Ahn had no contractual relationship with either defendant, and Korea Express had no agreement with Ahn or New Star; thus, Ahn was entitled to no relief against either defendant and neither Ahn nor New Star was entitled to any relief against Korea Express.

In support of the motion, defendants adduced the declarations of Nam and other employees of Kumho and Korea Express averring to the facts described above, including that:  (1) New Star never objected to Kumho's April and October 2008 fleet reductions; (2) Kumho paid New Star in full for all trucks used and other services rendered pursuant

_[footnote continued from previous page]_
answer under Section 2030.410, and the responding party may then use the amended answer."]).

12

to the 2008 agreement; (3) New Star never told Kumho it had not been paid in full for its services; (4) Kumho had no oral or written agreement with Ahn, only a written agreement with New Star; (5) Korea Express had no oral or written agreement with New Star or Ahn; (6) neither Kumho nor Korea Express agreed to pay for any advertising on New Star trucks; and (7) on behalf of New Star, Ahn agreed to Kumho's termination of the 2008 agreement effective September 30, 2009. In a further declaration, defendants' counsel authenticated defendants' discovery responses and other documents.

In opposition to the motion, plaintiffs submitted the declaration of Ahn explaining the factual bases of plaintiffs' claims consistent with the allegations of the complaint. Plaintiffs also served amended responses to defendants' "state all facts" special interrogatories and requests for production, essentially repeating the allegations of the complaint and the additional detail in Ahn's declaration. In a further declaration, plaintiffs' counsel explained the amended discovery responses: "Plaintiffs' initial discovery responses contain certain responses that were inadvertently omitted and mistakenly stated. As [a] result, plaintiffs have served and submitted . . . amended responses."

In reply, defendants objected to nearly every statement in Ahn's declaration on the ground it violated the *D'Amico* rule because it was contrary to plaintiffs' initial discovery responses and no explanation for the discrepancies had been given. Defendants also adduced excerpts of Ahn's deposition which defendants took shortly after plaintiffs filed their opposition, and argued, based on Ahn's deposition testimony, that plaintiffs' claims

13

still lacked evidentiary support. With their reply, defendants filed a motion for sanctions against plaintiffs and their counsel on the ground the allegations of the complaint were, "by plaintiffs' own admission, completely lacking in factual support," and by signing the complaint plaintiffs' counsel falsely certified that the allegations had evidentiary support. (§ 128.7, subd. (b)(3).) Plaintiffs and their counsel opposed the sanctions motion.

E. *The Trial Court's Rulings*

At a combined hearing on the motions for summary judgment and sanctions, the court first asked plaintiffs' counsel why plaintiffs' initial discovery responses omitted "critical facts." Counsel explained that a "new attorney" in their offices had prepared the responses "say[ing] that we did not have any evidence, which supported our contentions, which was obviously untrue, because we attached exhibits to our complaint . . . ." The court noted the initial discovery responses "were not the result of a lack of merit in the case necessarily. . . . because there were more facts contained in the complaint that could have been alleged in response to these discovery [requests]." Rather, in the court's view the initial responses were "a result of ineptitude and inexcusable neglect" on the part of the attorney who prepared them. The court criticized plaintiffs' counsel for failing to admit their mistake in their opposition to the motion for summary judgment, for failing to address "the *D'Amico* issue" in their opposition to the motion for sanctions, and for "blam[ing]" defendants for misreading the initial discovery responses. Still, the court said it did not believe Ahn's declaration was "contrived" or "untruthful" and "certainly raise[d] triable issues of fact" on plaintiffs' claims. Plaintiffs' counsel argued it would be

14

an injustice to plaintiffs to grant defendants' motion for summary judgment based on the mistake by plaintiffs' law firm.

The court nonetheless granted the motion for summary judgment, reasoning it was required to disregard Ahn's declaration based on contradictions between it and plaintiffs' initial and factually devoid discovery responses. The court denied defendants' motion for sanctions against plaintiffs and their counsel, noting plaintiffs' claims had evidentiary support and the court was therefore "unable to [find]" plaintiffs' counsel violated the certification requirement. (§ 128.7, subd. (b)(3).) Plaintiffs appeal from the judgment in favor of defendants, and defendants appeal from the postjudgment order denying their motion for sanctions.

## IV. DISCUSSION

### A. *Ahn's Declaration Was Erroneously Disregarded Under the* D'Amico *Rule*

Plaintiffs claim the trial court misapplied the *D'Amico* rule in disregarding Ahn's declaration in ruling on the motion for summary judgment. For their part, defendants argue the trial court acted within its discretion in disregarding the declaration because it was inconsistent with plaintiffs' initial and "factually devoid" discovery responses, in which plaintiffs stated they did not know whether any facts or documents existed to support various allegations of their complaint.

As defendants point out, the weight of California appellate court authority holds that a trial court's evidentiary rulings in summary judgment proceedings are reviewed for an abuse of discretion (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th

15

1326, 1335), but the California Supreme Court has yet to determine "generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or are reviewed de novo." (*Reid v. Google, Inc., supra,* 50 Cal.4th at p. 535.) Here it makes no difference whether the abuse of discretion or de novo standard of review applies to the trial court's ruling excluding Ahn's declaration. As we explain, the trial court misapplied the *D'Amico* rule and, therefore, necessarily abused its discretion in excluding the declaration.

    1.  The *D'Amico* Rule Properly Applied

    In *D'Amico*, the California Supreme Court held, "'[w]here . . . there is a *clear and unequivocal admission* by the plaintiff, himself, in his deposition'" and the plaintiff contradicts that admission in a subsequent declaration, "'we are forced to conclude there is no *substantial* evidence of the existence of a triable issue of fact.'" (*D'Amico, supra,* 11 Cal.3d at p. 21, first italics added, quoting *King v. Andersen* (1966) 242 Cal.App.2d 606, 610 [assault victim's affidavit stating unnecessary force was used disregarded in light of her prior deposition testimony that no force was used].) The court explained: "As the law recognizes in other contexts (see Evid. Code, §§ 1220-1230) admissions against interest have a very high credibility value. This is especially true when . . . the admission is obtained . . . in the context of an established pretrial procedure whose purpose is to elicit facts." (*D'Amico, supra,* at p. 22.)

    In *Price v. Wells Fargo Bank, supra,* 213 Cal.App.3d at page 482, the court warned that, "an uncritical application of the *D'Amico* decision can lead to anomalous

16

results, inconsistent with the general principles of summary judgment law." The *Price* court cautioned that *D'Amico* should not be interpreted "as saying that admissions should be shielded from careful examination *in light of the entire record*." (*Ibid*., italics added.) This is because the record may contain evidence that *credibly contradicts or explains* what might appear to be clear and unequivocal admissions, if the admissions are viewed in isolation and without reference to the other evidence. (See *ibid.* ["summary judgment should not be based on tacit admissions or fragmentary and equivocal concessions, which are contradicted by other *credible* evidence"], italics added.) In the case before it, the *Price* court concluded the trial court properly relied on the plaintiffs' admissions "only" because nothing in the record was "materially" inconsistent with them. (*Ibid*.)

Courts have consistently refused to apply the *D'Amico* rule to exclude evidence in opposition to a summary judgment motion when the evidence in the record on the motion credibly explains or contradicts a party's earlier admissions. (E.g., *Scalf, supra,* 128 Cal.App.4th at p. 1523 [party's deposition testimony that there were no defects in log cabin kit credibly explained by other evidence showing the defects became apparent only after the kit was inspected]; *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1503 [the plaintiff's deposition testimony that note was never assigned to her credibly explained by the plaintiff's supplemental declaration stating she did not understand the question asked of her at deposition]; cf. *Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087 [the plaintiff's declaration stating he was exposed to asbestos while working at a plant while the defendant was working there was properly disregarded as not credible in

17

view of the plaintiff's prior interrogatory responses unequivocally indicating that the defendant was working elsewhere at the time].)

The *Scalf* court aptly summarized the proper application of the *D'Amico* rule: "While the *D'Amico* rule permits a trial court to disregard declarations by *a party* which contradict his or her own discovery responses (absent a reasonable explanation for the discrepancy), it does not countenance ignoring other credible evidence that contradicts or explains that party's answers or otherwise demonstrates there are genuine issues of factual dispute."  (*Scalf, supra,* 128 Cal.App.4th at pp. 1524-1525.)

2.  Application

The question presented here is whether plaintiffs' initial and "factually devoid" responses to defendant's "state all facts" special interrogatories and requests for production—in which plaintiffs stated they *did not know* whether any facts or documents supported various allegations of their complaint—constituted clear and unequivocal admissions of fact which plaintiffs could not credibly contradict by Ahn's declaration or the other evidence adduced in opposition to the motion.  In light of *all of the evidence* adduced on the motion, we conclude plaintiffs' discovery responses fell well short of constituting clear and unequivocal admissions of fact which plaintiffs could not credibly contradict or amend in opposing the motion.

To be sure, plaintiffs had a duty to answer the written discovery as completely and straightforwardly as the information available to them permitted (*Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 76; §§ 2030.220 [obligations of responding

18

party in answering interrogatories]; 2031.220-2031.240 [compliance with inspection demands]) and they failed to do so. But evasive answers to written discovery is not a legally sufficient ground for granting a motion for summary judgment, particularly when other evidence adduced on the motion shows there are triable issues of material fact. This is because summary judgment is proper only if *all the papers* submitted on the motion show there are no genuine issues of material fact requiring a trial. (§ 437c, subd. (c); *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 843.)

*Mason* is analogous and instructive. The defendants, a clinical psychologist and a marriage, family, and child counselor, moved for summary judgment on the ground the plaintiff's professional negligence claims against them were barred by the applicable three-year limitations period. (*Mason, supra,* 228 Cal.App.3d at pp. 540-541; § 340.5.) In a previous interrogatory response, the plaintiff stated her injuries began occurring in September 1977, more than three years before she filed her complaint. (*Mason, supra,* at pp. 540-541.) Then, in a declaration in opposition to the motion, the plaintiff explained that her previous response "was a mistake," and that September 1977 was actually the time her therapy with defendants commenced. (*Id*. at p. 545.) The plaintiff further explained that one of the defendants initiated a sexual relationship with her in 1983, and as a result she began suffering mental and emotional distress symptoms in 1986 and 1987, within the limitations period. (*Ibid.*)

The *Mason* court found the plaintiff's explanation credible and reversed summary judgment in favor of the defendants. (*Mason, supra,* 228 Cal.App.3d at p. 546.) The

19

court reasoned that if a trier of fact believed the sexual relationship began in 1983, as the plaintiff claimed in her declaration, the trier of fact could also reasonably conclude that the plaintiff's initial interrogatory response that her injuries began occurring in September 1977 was "a simple mistake." (*Ibid*.) The *Mason* court accordingly refused to disregard the plaintiff's declaration explaining her prior interrogatory response under the *D'Amico* rule, reasoning it was not "free" to disregard the explanation because a trier of fact could find it credible. (*Mason, supra,* at p. 545.)

Similarly here, plaintiffs' counsel explained in an opposing declaration, and again at the hearing on defendants' motion, that plaintiffs' initial discovery responses were a "mistake" made by a "new" and apparently unsupervised attorney employed by her law firm. In determining whether to disregard Ahn's declaration under *D'Amico*, the question for the trial court was not whether the statements in the declaration were inconsistent with plaintiffs' initial discovery responses. (See *Scalf, supra,* 128 Cal.App.4th at p. 1525.) Rather, the question was whether, in light of *all the evidence adduced on the motion*, a reasonable trier of fact could conclude that plaintiffs' initial discovery responses were a mistake and that the contradictory statements in Ahn's declaration were credible. (*Mason, supra,* 228 Cal.App.3d at pp. 545-546, accord, *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 473-474 [assessing discovery responses in light of entire record].)

As the trial court acknowledged, all of the evidence adduced on the motion showed that, contrary to their initial discovery responses, plaintiffs had credible evidence

to support their claims. The parties did not dispute that New Star and Kumho entered into the 2008 agreement; that Kumho reduced the dedicated fleet of trucks from eight to six, then from six to four, during 2008; or that New Star placed "Kumho Tires" advertising on all 40 of its trucks. The parties submitted conflicting evidence concerning whether Ahn or New Star agreed to the 2008 fleet reductions; whether Ahn agreed to the termination of the 2008 agreement by Korea Express in August 2009; whether, in 2007, Kumho orally agreed to pay Ahn or New Star for placing advertising on New Star trucks; and whether Korea Express assumed Kumho's obligations under the 2008 agreement and the alleged 2007 oral advertising agreement. In light of the entire record, a reasonable trier of fact could have concluded that plaintiffs' initial discovery responses were, as plaintiffs claimed, a mistake, and the statements in Ahn's declaration were credible. For this reason, the trial court misapplied the *D'Amico* rule and abused its discretion in disregarding Ahn's declaration in ruling on the motion.

At times, courts have stated the *D'Amico* rule in broad, summary terms which may be misconstrued as suggesting that prior discovery responses or purported admissions may be assessed in isolation and not in light of other evidence that credibly contradicts or explains them. (See, e.g., *Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 2 [flatly stating, "a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses"]; *Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 860, quoting *Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451 ["[W]e are constrained by the well settled rule that '[a] party cannot create an issue of fact by a declaration which

21

contradicts his prior [discovery responses] . . . .'"];  *Niederer v. Ferreira, supra,* 189

Cal.App.3d at p. 1503, quoting *Leasman v. Beech Aircraft Corp.* (1975) 48 Cal.App.3d

376, 382 ["'[W]hen a defendant can establish his defense with the plaintiff's admissions

sufficient to pass the strict construction test imposed on the moving party [citations], the

credibility of the admissions are valued so highly that the controverting affidavits may be

disregarded as irrelevant, inadmissible or evasive.'"].)  Such summary statements of the

*D'Amico* rule must not be misconstrued as allowing summary judgment to be granted

based on what may appear, in isolation, to be clear and unequivocal admissions, when the

purported admissions are credibly contradicted or explained by other credible evidence in

the record, and all the evidence in the record shows there are triable issues of material

fact.

B.  *There are Triable Issues of Fact on the Disputed Elements of Plaintiffs' Claims*

Plaintiffs claim defendants failed to meet their initial burden of demonstrating

plaintiffs could not establish one or more elements of their causes of action (§ 437c, subd.

(*o*)(1)), even if Ahn's declaration is disregarded.  It is unnecessary to determine this

question because all of the papers and evidence that were or should have been admitted

on the motion, including Ahn's declaration and his subsequent deposition testimony,

shows there are triable issues on the disputed elements of plaintiffs' claims.

1.  Breach of the 2008 Agreement (First and Second Causes of Action)

Defendants assert that plaintiffs' claims for breach of the 2008 agreement against

both defendants (first cause of action ) and against Korea Express for orally assuming

Kumho's obligations under the agreement (second cause of action) had no merit for the following reasons: (1) Ahn agreed to the April and October 2008 fleet reductions from eight trucks to six then from six trucks to four; (2) according to its terms, the agreement could be cancelled on 90 days' notice before its three-year term expired; (3) in 2009, Ahn agreed the agreement could be cancelled on 30 days' notice and Kumho/Korea Express terminated the agreement on 30 days' notice effective September 30, 2009; and (4) Korea Express is not bound by the agreement because it is not a signatory and did not orally agree to assume Kumho's obligations under the agreement, as the second cause of action alleges. There are triable issues of fact concerning each of these questions.

First, there are triable issues concerning whether Korea Express is bound by the 2008 agreement. The record shows New Star began providing trucking services to Korea Express no later than 2009, after Kumho "outsourced" its entire logistics department to Korea Express. This supports a reasonable inference that Korea Express agreed, by its conduct if not by its words, to assume Kumho's obligations under the agreement. Second, Ahn avers he never agreed to the April and October 2008 fleet reductions and New Star continued to invoice defendants for all trucks dedicated to but unused by defendants for the duration of the three-year term of the agreement.

Third, the 2008 agreement is ambiguous as to whether it could be cancelled on 90 days' notice before its three-year term expired. But even if it could be cancelled on 90 days' notice within its three-year term, there is no evidence it was cancelled on 90 days' notice. Further, defendants claim that in mid-2009 Ahn agreed the agreement could be

23

cancelled on 30 days' notice, and defendants cancelled the agreement on 30 days' notice effective September 30, 2009. But Ahn disputes that he ever agreed the agreement could be cancelled on 30 days' notice, or within its three-year term.

2. Third Cause of Action (Breach of Oral Contract for Advertising)

Defendants claim plaintiffs' third cause of action against defendants for breach of the alleged 2007 agreement to pay Ahn $1,000 per month per truck for placing Kumho Tires advertising on all 40 New Star trucks has no merit because: (1) Ahn admitted in his deposition that no agreement for advertising was ever made; (2) Kumho never agreed to pay Ahn or New Star $1,000 per month per truck for the advertising; and (3) there is no evidence Korea Express is bound by the advertising agreement.

Contrary to defendants' claim, Ahn did not admit in his deposition that no agreement for advertising was ever made with Kumho. Defendants point to Ahn's deposition testimony that no one from Kumho ever came to him and said, "'[y]es, we agree to pay you $1,000 a month'" for advertising. But Ahn further testified in his deposition that (1) Chu Hwan Kim of Kumho told Ahn that he (Chu Hwan Kim) was going to submit Ahn's request for payment to Kumho for approval, and (2) another Kumho representative, Byung Sun Kim, later told Ahn he was going to "help" Ahn get payment from Kumho for the advertising. These discussions occurred after Kumho had "Kumho Tires" painted on all 40 New Star trucks. Viewed in its entirety, Ahn's deposition testimony indicates Kumho agreed to pay Ahn for the advertising.

24

Lastly, even though there is no evidence that anyone representing Korea Express expressly agreed, either orally or in writing, to pay Ahn or New Star for the advertising on the New Star trucks, the record supports a reasonable inference that Korea Express, in assuming Kumho's contractual obligations to plaintiffs under the 2008 agreement, implicitly agreed to pay plaintiffs for the advertising.

3.  Quantum Meruit and Common Counts (Fourth and Fifth Causes of Action)

Quantum meruit allows a party who has provided work or services for the benefit of another to recover the *reasonable value* of the services.  (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 249.)  There must be an explicit or implicit request for the services or an acquiescence in their provision by the person for whose benefit the services were performed.  (*Ibid*.)  The record shows plaintiffs provided dedicated trucking services to Kumho and Korea Express and provided advertising services to Kumho.  Plaintiffs were not paid for these services and there is a triable issue whether, by its conduct, Korea Express assumed Kumho's obligations to pay plaintiffs for their services rendered to Kumho.

C.  *The Motion for Sanctions Was Properly Denied*

Section 128.7, subdivision (c) authorizes the trial court to impose sanctions against attorneys and parties whom "the court determines" have violated or are responsible for violating subdivision (b).  Subdivision (b) states:  "By presenting to the court, whether by signing, filing, submitting, or later advocating a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the

best of the person's knowledge . . . . [¶] . . . [¶] (3) The allegations and other factual contentions have evidentiary support or . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." (§ 128.7, subd. (b).)

On their appeal from the postjudgment order denying their motion for sanctions against plaintiffs and plaintiffs' counsel under section 128.7, defendants claim the trial court erred as a matter of law in denying the motion. They maintain that by authorizing and signing both the complaint and the "factually devoid" discovery responses, plaintiffs and their counsel falsely certified that "both [were] true" when at least one was false and lacking in evidentiary support. (§ 128.7, subd. (b)(3).) We find no merit to defendants' appeal.

Defendants urge this court to independently determine whether plaintiffs and their counsel violated subdivision (b)(3) of section 128.7, "either in filing a complaint with no [evidentiary ] basis, or [by] responding to discovery by failing to conduct a reasonable inquiry." They argue that whether "specific conduct" constitutes a violation of subdivision (b)(3) is a question of law subject to de novo review; however, the case they cite for this proposition does not support it. (*Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1452.) Rather, the court in *Vidrio* observed: "[T]*he proper interpretation of a statute* . . . relied upon by the trial court as its authority to award sanctions is a question of law, which we review de novo." (*Ibid*., italics added.) This does not mean we independently review a trial court's determination not to impose sanctions under section 128.7.

26

To the contrary, we review a trial court's decision not to impose sanctions under the deferential abuse of discretion standard—even if the trial court found a violation of section 128.7, subdivision (b) occurred. (*Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 422.) If the trial court determines a violation of subdivision (b) occurred, it exercises its discretion to impose sanctions. (*Kojababian v. Genuine Home Loans, Inc., supra,* at p. 422; § 128.7, subd. (c).) "Absent a showing of arbitrariness, we must presume the correctness of the trial court's decision *not to award sanctions.* [Citation.]" (*Kojababian v. Genuine Home Loans, Inc., supra,* at p. 422, italics added.)

In denying the motion, the court said: "I'm unable to find that counsel violated the certification requirements under [section] 128.7, notwithstanding discovery responses, which expressly stated the absence of facts to support the claim. I think it would be unjust in this case to do so, particularly in light of the fact that the defendant[s are] getting their pound of flesh by having the case dismissed and obtaining the judgment in their favor. . . . [¶] . . . [¶]

"I'm unable to say that these claims don't have evidentiary support and that's why it's troubling. Particularly where the error may well be the ineptitude of counsel. But I think the fact that counsel is going to have to . . . call his client[s] and tell them the case has slid under the waves is sufficient punishment and serve[s] as a stern reminder to certainly be more cautious in furnishing as you say discovery—not just discovery

27

responses, under penalty of perjury, and you're absolutely entitled to rely on those and you did reasonably rely on them."

The trial court did not abuse its discretion in refusing to impose sanctions against plaintiffs or their counsel.  Indeed, there was no basis to impose sanctions.  "The purpose of section 128.7 is to deter frivolous *filings*."  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826, italics added.)  And as the trial court recognized, the complaint was not lacking in evidentiary support.  (§ 128.7, subd. (b)(3).)  Further, section 128.7 does not apply to discovery responses (§ 128.7, subd. (g)), and in any event neither plaintiffs nor their counsel certified those responses to the court, in any filing. Rather, plaintiffs' counsel admitted the discovery responses were "a mistake"; the trial court accepted counsel's explanation; and the record supports it.

## V.  DISPOSITION

The judgment is reversed and the postjudgment order denying defendants' motion for sanctions (§ 128.7) is affirmed.  The matter is remanded to the trial court with directions to set aside its order granting defendants' motion for summary judgment and to

28

enter a new order denying that motion.  Plaintiffs are awarded their costs on appeal.  (Cal.

Rules of Court, rule 8.278(a)(3).)

CERTIFIED FOR PARTIAL PUBLICATION

KING
J.


We concur:

RAMIREZ
P. J.

RICHLI
J.