Filed 8/30/24  Franceschi v. Baldwin CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ERNEST J. FRANCESCHI, JR., | B323870 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 21STCV35596 |
| GLORIA BALDWIN, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michelle Williams Court, Judge.  Affirmed.

Ernest J. Franceschi, Jr., in pro. per., for Plaintiff and Appellant.

Davis Wright Tremaine, Mary H. Haas, Daniel H. Leigh and Mark C. Burnside for Defendant and Respondent.

_____

## SUMMARY

Plaintiff Ernest J. Franceschi, Jr. appeals from an order granting defendant Gloria Baldwin's motion to quash service of the summons and first amended complaint for lack of personal jurisdiction. We affirm the order.

## FACTS

Plaintiff sued Christopher Baldwin and his mother, Gloria Baldwin, alleging several causes of action including extortion. Plaintiff, who is an attorney, alleged he had represented Christopher Baldwin in two lawsuits in which Mr. Baldwin's father funded the upfront payments. Plaintiff alleged Mr. Baldwin, with Ms. Baldwin's encouragement, refused to settle or mediate the lawsuits, and plaintiff withdrew as counsel. After that, Christopher Baldwin sent an e-mail to plaintiff stating plaintiff failed to provide receipts for the monies paid to him and demanding return of the funds under threat of reporting plaintiff to the IRS and the State Bar. Plaintiff alleged Ms. Baldwin "conspired with, aided and abetted, provided material encouragement to Christopher, and was a driving force behind the extortionate email."

Ms. Baldwin filed a motion to quash service, contending the court lacked both general and specific jurisdiction over her. The motion was accompanied by Ms. Baldwin's declaration stating, among other things, that her permanent residence is in New Mexico, where she was born and lived her entire life; she is registered to vote in New Mexico; she has never resided in California, does not own or lease property in California, has no bank accounts or mailing address in California, and does not conduct business or have any employees or representatives in California. Ms. Baldwin also stated that she signed a guarantor

2

application as part of her son Christopher's initial leasing agreement in 2015 for an apartment in Marina del Rey, but was not listed as an occupant on the lease agreement, never resided there, and did not pay for her son's rent.

The trial court granted plaintiff leave to take Ms. Baldwin's deposition on the limited issue of jurisdiction, after which plaintiff filed his supplemental opposition. Plaintiff contended that Ms. Baldwin "has engaged in 'substantial, continuous, and systematic' contacts with California so as to subject her to general jurisdiction." His evidence concerned only Ms. Baldwin's involvement in her son's lease of the apartment in Marina del Rey: her guaranties of payment in the event of her son's default on his one-year leases from 2015 to 2022 (for "as long as he's there") and a 2015 "onsite transfer application" that stated Ms. Baldwin would also be living in the new apartment to which her son wished to transfer and that her monthly income was $50,000. Plaintiff said nothing in his supplemental opposition about specific jurisdiction, but cited several authorities that involved only specific jurisdiction (and the heading of his argument stated that "executing a contract in the forum state constitutes purposeful availment").

The trial court granted Ms. Baldwin's motion to quash, finding that plaintiff "failed to meet his burden to establish specific jurisdiction" and failed to demonstrate the court could exercise general jurisdiction over Ms. Baldwin.

As to specific jurisdiction, the court observed the only evidence provided related to Ms. Baldwin's involvement in her son's leases, and plaintiff's lawsuit "does not involve the lease agreement, Christopher Baldwin's tenancy, or Gloria Baldwin's contractual obligations." Thus plaintiff failed to show his lawsuit

3

was related to or arose out of Ms. Baldwin's contacts with the forum, as required for specific jurisdiction.

As for general jurisdiction, the court observed that substantial, continuous and systematic contacts in the forum state will support jurisdiction even where the plaintiff's cause of action is unrelated to the defendant's contacts with the forum, but here the only evidence related to the leases. The court recited facts from Ms. Baldwin's declaration about her lifelong residence in New Mexico and lack of any connections or business activities in California (see p. 2, *ante*); that she was not listed as an occupant on the lease agreement, never resided at the apartment, and did not pay her son's rent. The court also cited Ms. Baldwin's deposition testimony that the representation in the "onsite transfer application" that she would live in the apartment "was not authorized and she was not a co-tenant." Further, the court cited legal authorities for the proposition that a guaranty relationship by itself is insufficient to establish jurisdiction. After citing several other authorities, the court concluded that plaintiff's evidence "does not establish Gloria Baldwin is essentially at home in California, such that the Court can exercise general jurisdiction over her."

Plaintiff filed a timely appeal.

## DISCUSSION

We find no flaw in the trial court's analysis, which is fully supported by the law and the evidence.

## 1. The Legal Principles

The exercise of jurisdiction over a nonresident defendant comports with constitutional principles "if the defendant has such minimum contacts with California that the assertion of jurisdiction does not violate traditional notions of fair play and

4

substantial justice." (*Brue v. Al Shabaab* (2020) 54 Cal.App.5th 578, 589 (citing cases) (*Brue*).) "Under the minimum contacts test personal jurisdiction may be either general or specific." (*Ibid.*)

"General jurisdiction exists when the defendant's contacts with the forum state are so 'substantial' or 'continuous and systematic' as to make it consistent with traditional notions of fair play and substantial justice to subject the defendant to the jurisdiction of the forum even when the cause of action is unrelated to the defendant's contacts with the forum." (*Brue, supra,* 54 Cal.App.5th at p. 589.)

"Specific jurisdiction, on the other hand, requires some nexus between the cause of action and the defendant's activities in the forum state. Under well-established case law specific jurisdiction exists when (1) the defendant has 'purposefully availed' himself or herself of forum benefits; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the assertion of personal jurisdiction would comport with ' "fair play and substantial justice." ' " (*Brue, supra,* 54 Cal.App.5th at pp. 589-590.)

"The plaintiff bears the burden of showing the defendant has sufficient minimum contacts with the state to justify jurisdiction. [Citation.] When the evidence of jurisdictional facts is in conflict, we resolve that conflict in favor of the trial court's order, so long as it is supported by substantial evidence. [Citation.] If that evidence is not disputed, the question of jurisdiction is one of law; and we independently review the trial court's decision." (*Brue, supra,* 54 Cal.App.5th at p. 590.)

## 2. Contentions and Conclusions

We begin by observing that plaintiff repeatedly invokes the term "purposeful availment," a concept most frequently used in connection with specific jurisdiction (see above), which also requires the controversy to relate to the defendant's contacts with the forum. Plaintiff does not contend the controversy related to Ms. Baldwin's contacts with California. Instead, plaintiff contends the requirement for general jurisdiction—that Ms. Baldwin has engaged in "substantial, continuous, and systematic" contacts with California, subjecting her to California jurisdiction over *any* cause of action—"is satisfied by Gloria having repeatedly (on a yearly basis) incurred contractual liability for the Marina del Rey apartment and made substantial monthly rental payments for the apartment over the course of several years." This is wrong for multiple reasons.

Ms. Baldwin's only alleged "contractual liability" is her yearly guaranty of her son's obligations under his one-year leases. Plaintiff ignores entirely the principle that "our Supreme Court has long recognized a guaranty relationship by itself is insufficient to establish jurisdiction." (*Pennsylvania Health & Life Ins. Guaranty Assn. v. Superior Court* (1994) 22 Cal.App.4th 477, 487.) The *Pennsylvania Health* court cited *Sibley v. Superior Court* (1976) 16 Cal.3d 442 and explained: "*Sibley* held a California court could not constitutionally assert jurisdiction over a nonresident defendant who had guaranteed the performance of a Georgia corporation, even though the defendant knew the Georgia corporation's breach of the agreement would have an effect in California and that its issuance of the guaranty would influence the plaintiff California corporation to enter into the underlying agreement. *Sibley* stressed that by guaranteeing the

6

obligation, the defendant did not 'anticipate[] that he would derive any economic benefit' nor 'intend[] to conduct business or in any other way directly or indirectly gain from dealings in this state.' " (*Pennsylvania Health,* at p. 487, quoting *Sibley,* at pp. 447-448.) The same is true here: there is no evidence Ms. Baldwin anticipated any economic benefit or intended to conduct business or otherwise gain from dealings in this state by guaranteeing her son's lease payments.

Ignoring the pertinent authorities, plaintiff cites *Van Buskirk v. Van Buskirk* (2020) 53 Cal.App.5th 523, 533, claiming it stands for the proposition that "entering into 'transactions about land' governed by California law is purposeful availment." The court made no such statement. *Van Buskirk* involved specific jurisdiction, where (unlike here) the controversy related to the defendants' contacts with the forum. (*Id.* at p. 531.) The *Van Buskirk* court found specific jurisdiction over four defendants who were "deeply involved" with a trust that "originated and was administered in California," was governed by California law, and held interests in California real estate. (*Id.* at pp. 531-532.) Among other things, the court concluded the defendant mother (who had moved to Idaho) "has been a longtime California resident, a California property owner, a California trust creator and participant, and a California plaintiff. The mother purposefully availed herself of this state's benefits, beyond question." (*Id.* at p. 533.) *Van Buskirk* is nothing like this case and is of no precedential value to this case.

Plaintiff's assertion that Ms. Baldwin "made substantial monthly rental payments for the apartment over the course of several years" is unsupported by any evidence. Plaintiff points to records from the landlord which he says show various

delinquencies and defaults by Christopher Baldwin (one in 2017 and the rest during the pandemic in 2020 and 2021) and asks us to infer that his mother paid the lease obligations "whenever Christopher comes up short whenever rent is due." The trial court, however, credited Ms. Baldwin's declaration that she never resided at the apartment and did not pay for her son's rent. Where there are conflicts in the facts, they are resolved in favor of the trial court's order if supported by substantial evidence, as they are here. (*Brue, supra,* 54 Cal.App.5th at p. 590.)

Plaintiff repeatedly asserts that Ms. Baldwin "pays for apartment expenses," "leases an apartment in the State of California" and has made representations to the landlord "that she lives there" or intended to live there. But the evidence is that the only lessee is her son Christopher and that Ms. Baldwin guarantees payment if Christopher defaults. (Indeed, the guaranty agreement states that the guarantor "acknowledges that he/she has no right to access the premises without the consent of the resident.") Further, Ms. Baldwin testified at her deposition that the representation she would live in the apartment (which appeared on a 2015 application to transfer from one apartment to another) was unauthorized. In any event, the pertinent point is that, whether or not the 2015 statement was authorized, and whatever she may have intended to do in 2015, in fact Ms. Baldwin never lived there and there is no evidence to the contrary.

In the statement of facts in his opening brief, plaintiff tells us (without any citations to the record) that Mr. Baldwin's parents each own 50 percent of Enterprise Builders, a large New Mexico construction company. Plaintiff then tells us—again without citation to the record—that Mr. Baldwin's parents "have

8

been supporting Christopher through the artifice of having him on the Enterprise Builders payroll as an officer even though Enterprise Builders does no business in California." Then plaintiff says that "[a]s a 50% controlling owner of Enterprise Builders, [Ms. Baldwin] made the decision to maintain a purported executive level employee (the Vice President of Marketing) in the State of California, Christopher Baldwin, who according to her testimony, was and continues to be on the company payroll." Again, no record citations. Plaintiff concludes that Ms. Baldwin and Enterprise Builders are required to comply with various California employment taxes and regulations, and this "is evidence of a significant contact with the forum state." And in plaintiff's legal argument, plaintiff tells us Mr. Baldwin's parents "put him on the Enterprise Builders payroll and he draws a salary, which is obviously done to obtain a tax deduction for what would otherwise be non deductible support payments." And again, no references to the record.

We fail to see what any of this has to do with Ms. Baldwin's contacts with California for purposes of establishing personal jurisdiction over her. The evidence is that she has never worked at Enterprise Builders Corporation. In any event, plaintiff has forfeited the argument, such as it is. (*Audish v. Macias* (2024) 102 Cal.App.5th 740, 751 (*Audish*) [" ' "Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record." ' "]; see *ibid.* [" ' "Any statement in a brief concerning matters in the appellate record—whether factual or procedural and no matter where in the brief the reference to the record occurs—*must be supported by a citation to the record.*" ' "].)

Plaintiff contends Ms. Baldwin's declaration "should have been disregarded as a sham." Plaintiff tells us that the evidence before the trial court on the motion to quash was "replete with documents that establish that Gloria Baldwin as [*sic*] a controlling owner of Enterprise Builders and maintained a management level employee (Christopher) in California for more than ten years." For this, plaintiff cites without explanation to almost 200 pages of the record. Then plaintiff states that despite these (unidentified) documents, Ms. Baldwin's declaration states she has never been employed by Enterprise Builders. Plaintiff then once again cites the "onsite transfer application" where Ms. Baldwin is shown as "owner" of Enterprise Builders. Plaintiff cites authorities (without explaining them) that apply (or refuse to apply) " 'the *D'Amico* rule [which] permits a trial court to disregard declarations by a party which contradict his or her own discovery responses (absent a reasonable explanation for the discrepancy).' " (*Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 145, italics omitted, citing *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1.)

Even if plaintiff had not forfeited the point by requiring us to "scour the record unguided" (*Audish, supra,* 102 Cal.App.5th at p. 751), the authorities cited do not support disregarding Ms. Baldwin's declaration. The declaration was executed before Ms. Baldwin's deposition, at which plaintiff had a full opportunity to explore the issue, if there was one. We see no contradiction in being an owner of, and never having been employed by, a company.

10

## DISPOSITION

The order granting respondent's motion to quash for lack of personal jurisdiction is affirmed.  Respondent to recover costs on appeal.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.

VIRAMONTES, J.

11