Filed 2/5/21  Zamora v. CVS Pharmacy CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| OSIRIS ZAMORA et al., | B299375 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC661092) |
| v. | |
| CVS PHARMACY, INC., | |
| Defendant and Respondent. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge. Reversed.

Kostas Law Firm, James S. Kostas, for Plaintiff and Appellant.

Alston & Bird, Todd B. Benoff, Lisa L. Garcia, for Defendant and Respondent.

―――――――――――――――

A consumer purchased a product from a national retail pharmacy that did not make the text of the manufacturer's written warranty available for review before purchase as required under the federal Magnuson-Moss Warranty Act (Magnuson-Moss) (15 U.S.C. § 2301 et seq.). The consumer brought an action against the pharmacy seeking injunctive relief under the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.)[1] based on the violation of federal warranty law. In summary judgment proceedings, the consumer declared that she did not know she had a right to review the warranty before making her purchase, she would have reviewed the warranty if the seller had made it available as required by federal law, and she would not have purchased the product after she learned the warranty was limited to replacement parts. The trial court found her statement that she did not know she could review the warranty before purchase contradicted her deposition testimony. The court granted summary judgment on the ground that she did not suffer an economic injury, because she made a warranty claim and the manufacturer elected to replace the entire product, and therefore she lacked standing under the UCL. On appeal, the consumer contends her declaration was consistent with her deposition testimony, and she suffered economic injury as a result of the unfair

―――――――――――

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

competition, because she paid for a product that she would not have purchased if the seller had complied with the warranty law.

We conclude the consumer's declaration did not contradict any deposition testimony. Evidence that the consumer paid for a product that she would not have purchased if the seller had complied with federal warranty law met the standing requirements under the UCL by demonstrating an economic injury as a result of unfair competition. A triable issue of fact exists as to whether the seller's failure to make the warranty available was a substantial factor in causing the purchase of a product that the consumer would not have purchased had she known the warranty terms. Injunctive relief is available based on the threat of future harm to the general public. Therefore, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

### Allegations of the Complaint

On May 12, 2017, Osiris Zamora filed a class action lawsuit seeking injunctive relief for violation of the UCL. Omitting the class allegations, she filed an amended complaint on October 18, 2017, that sought injunctive relief for violation of the UCL on behalf of herself and others similarly situated as follows. CVS sells consumer goods at retail outlets throughout California. Zamora purchased a

WaterPik Water Flosser Ultra at CVS in Palmdale, California on December 12, 2016. The WaterPik package stated the product came with a manufacturer's "three-year warranty." Zamora believed the statement meant a full product warranty requiring the manufacturer to repair defects or replace the product at the manufacturer's expense. She could not read the warranty, which was inside the sealed package, and she did not know she had the right to request a copy of the warranty from CVS prior to purchase.

CVS did not post a copy of the limited warranty in close proximity to the area where the device was displayed for sale. The store also did not furnish copies of warranties upon request prior to purchase and did not post signs in prominent locations throughout its stores that were reasonably calculated to elicit prospective purchasers' attention advising them of their right to request a copy of the manufacturer's warranty prior to sale.

After making her purchase and opening the package, Zamora read the warranty and learned it was limited to replacement parts only. Customers were required to install the replacement parts themselves or pay a third party to have the parts installed. The limited warranty also required the purchaser to provide the original sales receipt as a condition of obtaining warranty services.

If Zamora had known of her right to request a copy of the WaterPik warranty prior to sale, she would have read the warranty before purchasing the product. Zamora lost

4

money, because she would not have purchased the WaterPik had she known the actual terms of the warranty.

Zamora brought the action acting in the capacity of a private attorney general to obtain relief for a large number of California consumers who will benefit significantly should the action be successful. She sought an injunction ordering CVS to comply with its obligations to provide warranty information prior to sale, as well as an award of attorney fees and costs.

## Motion for Summary Judgment and Supporting Evidence

On July 31, 2018, CVS filed a motion for summary judgment on the ground that Zamora did not have standing under the UCL. CVS argued Zamora did not suffer economic injury. Economic loss did not result simply because she parted with money, and she received the benefit of her bargain. Zamora also could not prove causation. The failure to display the warranty did not cause her harm, because she would not have read the warranty if it had been displayed. Lastly, CVS argued that Zamora could not prove imminent likelihood of future harm on behalf of herself or other CVS customers. She testified in deposition that she would not buy another WaterPik without asking to see the warranty, so there is no likelihood that she would be injured by CVS again in a similar way that could be redressed by injunctive relief. She was required to establish her individual standing

5

to sue, even if she claimed to be suing on behalf of others, but she could not identify any other customer who bought a WaterPik under similar conditions.

CVS submitted portions of Zamora's deposition testimony in support of the motion. Zamora decided to buy the device in order to better clean a crown that was bothering her. She compared the products at CVS, but did not talk to anyone about the warranty before she bought the device. She saw on the box that it had a three-year warranty. She believed all warranties were full warranties that covered the whole product. She assumed WaterPik would repair or replace the entire product, as opposed to just a piece that was broken.

On the underside of the box, in very fine print, the package stated "limited three-year warranty" and "see instruction booklet for warranty details." Zamora did not see the bottom of the packaging where it stated the warranty was limited. Zamora did not open the box to read the instruction booklet with the warranty details before buying the WaterPik, because it was sealed. She did not look online or take any steps to read the text of the warranty, because she relied on the statement on the box that it had a three-year warranty and her assumption of what she believed a full warranty was. She did not know that she could ask someone to see the warranty before she bought the product.

She bought the WaterPik and opened the box at home. The WaterPik manual was inside the box. She did not read the warranty information until the machine stopped working

two or three months later.  She was surprised the manual said the warranty was limited.  Counsel for CVS asked, "When you first read the [WaterPik] warranty, did you think that the [WaterPik] was worth less than full price because of that warranty?" Zamora answered, "No."  She called WaterPik, explained the problem with the device, and made a warranty claim.  WaterPik replaced the entire unit, which was the recourse that Zamora expected and thought she should receive under a warranty.  She has had the new unit for several months and it works fine.

Counsel for CVS asked, "Before December of 2016, what other products had you read the warranty for before buying?" Zamora answered, "I don't remember."  Counsel asked, "As you sit here today, can you think of any product where you've ever done that?"  She answered, "I'm thinking. I can't remember, sir."

She spoke about the issue with a customer at her job, who she knew was an attorney, and learned that she has a right to ask to see a copy of the warranty before buying the product.  She is now aware that she may ask to see a copy of the warranty before buying the product; there is no possibility that she would buy another WaterPik from CVS without asking to see a copy of the warranty first.  Zamora could not identify any other CVS customer who read "three-year warranty" on the WaterPik box and interpreted it to mean a full warranty or was upset about WaterPik's warranty.  She wants CVS to make warranty information available to customers before they purchase items.

CVS also submitted photographs of the WaterPik's packaging. The front of the package listed features including "Three Year Warranty." The back of the package had no information about the warranty. On the bottom of the box, in a very small font size, it states, "Limited three-year warranty. [¶] See instruction booklet for warranty details."

CVS submitted the instruction manual as well. The warranty states in pertinent part, "Water Pik, Inc. will replace at its discretion any part of the product, which in its opinion is defective, provided the product has not been abused, misused, altered or damaged after purchase . . . . Installation is the responsibility of the consumer and is not covered by the warranty."

CVS also submitted the declaration of a district manager, who stated that there were at least half a dozen signs at the front counter, the pharmacy counter, and the front door, among other locations. The signs included information about coupon policies, return policies, check acceptance, and prepaid gift card notices.

Although the evidence in support of the motion included Zamora's statement that after reading the warranty, she did not think the WaterPik was worth less than full price because of the warranty, CVS did not refer to this particular statement in the motion or in the separate statement of facts.

## Opposition to Motion for Summary Judgment and Supporting Evidence

Zamora filed an opposition to CVS's motion for summary judgment on the ground that she has standing, because (1) at the time of purchase she was unaware of her right to ask CVS for a copy of the warranty before purchase; (2) had she known of her right to inspect the warranty prior to purchase, she would have done so; and (3) she would not have purchased the WaterPik had she known the terms of the warranty. The money lost was the amount of the purchase price, which she would not have spent if she had known the terms of the warranty.

Zamora submitted portions of her deposition testimony in support of the opposition. She stated that she had owned a product that did not have what she considered to be a full warranty.

Zamora submitted her own declaration in support of the opposition. When she purchased the WaterPik, she did not know that she had the right to obtain a copy of the product warranty from CVS before she made her purchase. The warranty was not displayed with the product. She did not see any signs advising customers that the manufacturer's warranty was available for inspection prior to purchase. If she had known of her right to obtain a copy of the WaterPik warranty prior to purchase, she would have asked CVS for a copy of the warranty and she would have read it. Had she known the WaterPik warranty simply

9

provided for parts replacement and she would be responsible for installing replacement parts, she would not have purchased the device.

## Reply, Evidentiary Objections, and Trial Court Ruling

CVS filed a reply arguing that Zamora could not create a triable issue of fact by submitting a declaration that contradicted her deposition testimony. CVS characterized her testimony that she did not remember reading a warranty before buying any other product to mean that she had never read a warranty before in her life. CVS argued the statement in her declaration that she would have read the warranty if it had been made available before purchase contradicted her deposition testimony and must be disregarded.

In addition, CVS argued Zamora's theory that she suffered economic injury by paying the purchase price did not apply in cases without allegations of mislabeling or fraud. In the absence of fraud, Zamora did not suffer any harm because she received the benefit of the bargain of her transaction with CVS. CVS reiterated that Zamora lacks individual standing because she faces no likelihood of future harm, and this also precludes her from bringing her case on behalf of a class.

CVS filed evidentiary objections as well. CVS objected to six statements in Zamora's declaration. Statement 1 was, "At the time I purchased the WaterPik at a Palmdale CVS

10

store, I did not know I had the right to obtain a copy of the product's warranty from CVS before I made my purchase." CVS argued that the statement was barred under *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 (*D'Amico*), because she could not offer a declaration that simply contradicted her deposition testimony. CVS characterized the deposition testimony as follows: Zamora admitted that she had never read a warranty before in her life, did not read the warranty when she got home and opened the box, did not recall reading any presale signs in other stores and did not pay attention to any signs in the CVS, did not read the information on the bottom of the box that the warranty was limited, and took no steps to read the warranty before buying the device because she assumed it was a full warranty. CVS also objected that the statement would consume undue time, because it contradicted sworn testimony. Lastly, CVS objected to the statement on the ground that Zamora's knowledge of the presale rule was not relevant to the issue of standing. CVS had several objections to Zamora's other evidence as well.

A hearing was held on April 23, 2019. The court stated Zamora's declaration was inconsistent with her deposition testimony. Zamora argued that her declaration did not conflict with anything that she said at her deposition, because she was not asked any questions that pertained to her theory of standing. CVS argued Zamora admitted in deposition that she had never read a warranty, did not try to read the warranty because she assumed all warranties were

11

full warranties, and did not read the warranty for the WaterPik until the product malfunctioned. The trial court took the matter under submission.

The following day, the trial court ruled on the evidentiary objections and the motion for summary judgment. The court sustained CVS's objection to statement 1 from Zamora's declaration, and overruled CVS's objections to the other statements in Zamora's declaration and to Zamora's other evidence. The court granted the motion for summary judgment. The court found CVS presented undisputed evidence that Zamora purchased the device under the belief that it was covered by a full warranty and she received everything that she expected under that warranty when WaterPik sent her a replacement unit for free. Because she received the expected benefit of her bargain, she suffered no economic loss. Zamora's declaration did not create a triable issue of fact with respect to standing.

The trial court entered judgment in favor of CVS on May 10, 2019. Zamora filed a timely notice of appeal from the judgment.

## DISCUSSION

### Standard of Review

"Summary judgment is appropriate when all of the papers submitted show there are no triable issues of any material fact and the moving party is entitled to a judgment

12

as a matter of law. ([Code Civ. Proc.,] § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [(*Aguilar*)].)" (*Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 136 (*Ahn*).) "A defendant moving for summary judgment has the burden of showing the plaintiff's causes of action have no merit. (*Aguilar*[,] *supra*, 25 Cal.4th at pp. 849–850.) A defendant meets this burden if it makes a prima facie showing that one or more elements of each cause of action cannot be established or is subject to a complete defense. (*Id.* at p. 849.) If the defendant makes this showing, the burden shifts to the plaintiff to produce evidence demonstrating the existence of a triable issue of material fact. (*Id.* at pp. 849–850; [Code Civ. Proc.,] § 437c, subd. (p)(2).)" (*Ahn*, *supra*, 223 Cal.App.4th at p. 136.)

We review an order granting summary judgment de novo. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.) "The evidence of the moving party is strictly construed and that of the opponent is liberally construed, and any doubts as to the propriety of granting the motion are to be resolved in favor of the party opposing the motion." (*Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1333, fn. 2.) "'[S]ummary judgment cannot be granted when the facts are susceptible to more than one reasonable inference . . . .' [Citation.]" (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1180 (*Husman*).)

"'In determining whether a triable issue was raised or dispelled, we must disregard any evidence to which a sound objection was made in the trial court, but must consider any

13

evidence to which no objection, or an unsound objection, was made. (See *Reid* [*v. Google, Inc.* (2010)] 50 Cal.4th 512, 534; . . . [Code Civ. Proc.,] § 437c, subds. (b)(5), (c), (d).) Such evidentiary questions, however, are subject to the overarching principle that the proponent's submissions are scrutinized strictly, while the opponent's are viewed liberally.' (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 957.)" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852 (*Serri*).)

## Exclusion of Evidence

Zamora contends the trial court erred by excluding the statement in her declaration that she was unaware of her right to obtain a copy of the product warranty before she made her purchase. CVS objected to the statement on the grounds that it contradicted her deposition testimony and was not relevant. We agree with Zamora that the statement should not have been excluded.[2]

---

[2] In its respondent's brief on appeal, CVS asserts the trial court sustained objections to six statements in Zamora's declaration. This is incorrect. The minute order expressly stated: "Defendant's Objections to the Declaration of Osiris Zamora No. 1 is SUSTAINED; all other objections to that document are OVERRULED." Even if the trial court had sustained CVS's objections to multiple statements, however, our conclusion would be the same. The statements made in the declaration did not contradict Zamora's deposition testimony and should not have been excluded on this basis.

"[T]he weight of California appellate court authority holds that a trial court's evidentiary rulings in summary judgment proceedings are reviewed for an abuse of discretion (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335), but the California Supreme Court has yet to determine 'generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or are reviewed de novo' (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at p. 535)." (*Ahn, supra*, 223 Cal.App.4th at pp. 143–144.) In this case, under either standard of review, the statement was erroneously excluded.

When a party makes a clear and unequivocal admission in deposition testimony, contradictory statements in a subsequent declaration in opposition to summary judgment may be disregarded as irrelevant, inadmissible or evasive. (*Ahn, supra*, 223 Cal.App.4th at p. 144; *Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1521 (*Scalf*).) "As the law recognizes in other contexts (see Evid. Code, §§ 1220–1230) admissions against interest have a very high credibility value. This is especially true when . . . the admission is obtained . . . in the context of an established pretrial procedure whose purpose is to elicit facts." (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22.) There is simply no substantial evidence of a triable issue of fact. (*Id.* at p. 21.)

Admissions must be examined in the context of the entire record however. (*Ahn, supra*, 223 Cal.App.4th at

15

p. 144.) "This is because the record may contain evidence that credibly contradicts or explains what might appear to be clear and unequivocal admissions, if the admissions are viewed in isolation and without reference to the other evidence. [Citation.]" (*Ibid.*, italics omitted.) "Courts have consistently refused to apply the *D'Amico* rule to exclude evidence adduced in opposition to a summary judgment motion when either evidence adduced on the motion credibly explains or contradicts a party's earlier admissions." (*Id.* at pp. 144–145.)

"While the *D'Amico* rule permits a trial court to disregard declarations by *a party* which contradict his or her own discovery responses (absent a reasonable explanation for the discrepancy), it does not countenance ignoring other credible evidence that contradicts or explains that party's answers or otherwise demonstrates there are genuine issues of factual dispute." (*Scalf, supra,* 128 Cal.App.4th at pp. 1524–1525.)

In this case, Zamora declared that she did not know she had the right to obtain a copy of the product's warranty from CVS before making her purchase. No deposition testimony cited by CVS contradicted this statement. In fact, Zamora clearly testified in her deposition that in December 2016, she did not know she could ask to see a warranty before buying a product. Her declaration was entirely consistent with her deposition testimony.

CVS argued Zamora testified that she had never read a warranty before in her life, which was contradictory of her

16

declaration. In fact, Zamora testified that before December 2016, she did not remember having read a warranty before buying a product. She did not testify that she had never read a warranty before purchasing a product, but simply that she did not remember one way or the other. Her testimony was consistent with her declaration that she was not aware she had the right to review the warranty before making a purchase. CVS did not ask, and Zamora did not testify, about whether she had read a warranty before purchasing a product when the warranty was made available to her before purchase. Zamora's inability to recall whether she had read a warranty before making a purchase was consistent with, not contradictory of, her declaration.

Zamora's deposition testimony that she did not read the WaterPik warranty when she got home and opened the box also did not contradict her declaration that she did not know she could review the warranty before making her purchase and would have requested to read the warranty if she had known that she could. Her testimony showed that she gathered information to make an informed purchase by comparing products on the shelf in the store. After the purchase, when she was home, her purchase decision was already complete. The fact that she did not review the warranty after completing the purchase may go to the weight of the evidence, but does not contradict her declaration or make it not credible that she would have reviewed the warranty before making a purchase decision.

Zamora testified in deposition that she has made purchases from other major retailers, none of which had a sign saying that she could ask to see a warranty before buying a product. Her deposition testimony is consistent with, not contradictory of, her declaration that she did not know she had the right to see the warranty before purchase. CVS did not establish, through Zamora's deposition or any other evidence, that other stores where she has made purchases have signs posted about warranty rights which she read or failed to read.

Zamora's testimony that she did recall seeing signs posted in CVS on other topics did not contradict her declaration or make it less credible, because CVS did not submit evidence to show there were any signs posted in the store that applied to Zamora or her purchase. If Zamora failed to notice signs that affected her or her purchase, it would affect the weight of the evidence, but would not contradict her declaration that she would have noticed and responded to a sign about warranties.

The fact that Zamora read the clear print on the front of the box promoting the three year warranty, but did not read the very fine print underneath the box which revealed that the warranty was limited, also does not contradict her declaration that she did not know she could review the warranty before making her purchase and would have requested to review it had she known. Incomplete information and misleading packaging about product

18

warranties is exactly the type of confusion that the warranty law was designed to mitigate.

Zamora did not make a clear, unequivocal admission in her deposition that was contradicted in her declaration. The portions of her testimony that CVS argued were contradictory relate to the weight of the evidence, but none of the testimony contradicts the statements in her declaration or makes them not credible. If conflicting inferences can reasonably be drawn from the evidence, a triable issue of fact exists. (*Savaikie v. Kaiser Foundation Hospitals* (2020) 52 Cal.App.5th 223, 229–230.)

In addition, Zamora's statement in her declaration was clearly relevant to the issue of standing. If Zamora had been aware of her right to request the warranty before making a purchase, CVS's violation of the federal warranty requirements by failing to notify her of that right would not have been a substantial factor in causing her injury. In light of the requirement in summary judgment proceedings to construe the evidence presented by CVS strictly and the evidence presented by Zamora liberally, we conclude the trial court abused its discretion in sustaining CVS's objection to Zamora's declaration.

## UCL Claim

Zamora contends that she established standing under the UCL, because her evidence showed she suffered an economic injury as a result of unfair competition.

19

Specifically, she lost money, because she paid for a product that she would not have purchased if CVS had made the warranty available for review as required by law.  We agree that she has submitted evidence of an economic injury.

### A.  Presale Rule in Federal Warranty Law

"Magnuson-Moss governs warranties for consumer products distributed in interstate commerce.  It requires disclosures in connection with written warranties, regulates the substantive content of warranties, and establishes a federal cause of action for breach of a written or an implied warranty (15 U.S.C. § 2310(d)), among other provisions." (*Orichian v. BMW of North America, LLC* (2014) 226 Cal.App.4th 1322, 1330.)  Magnuson-Moss directs the Federal Trade Commission (FTC) to "prescribe rules requiring that the terms of any written warranty on a consumer product be made available to the consumer (or prospective consumer) prior to the sale of the product to him."  (15 U.S.C. § 2302(b)(1)(A).)

Under this authority, the FTC promulgated regulations requiring the seller of a consumer product with a written warranty that costs more than $15 to make the text of the warranty available to prospective purchasers by either (1) displaying it in close proximity to the product, or (2) furnishing it upon request prior to sale and placing signs reasonably calculated to draw a prospective buyer's attention in prominent locations in the store advising of the

availability of warranties upon request.  (16 C.F.R. § 702.3, subd. (a) (2021).)[3]

In introducing the original bill to the Senate, Senator Warren Magnuson described the need for requiring disclosure of warranty provisions as follows in part:  "'. . . [W]arranties have for many years confused, misled, and frequently angered American consumers . . . .  Consumer anger is expected when purchasers of consumer products discover that their warranty may cover a 25-cent part but not the $100 labor charge or that there is full coverage on a

---

[3] 16 C.F.R. section 702.3, subdivision (a), states in full: "The following requirements apply to consumer products actually costing the consumer more than $15.00:  [¶]  (a) Duties of seller.  Except as provided in paragraphs (c) through (d) of this section [related to catalog, mail order, and door-to-door sales], the seller of a consumer product with a written warranty shall make a text of the warranty readily available for examination by the prospective buyer by:  [¶] (1) Displaying it in close proximity to the warranted product (including through electronic or other means, if the warrantor has elected the option described in paragraph (b)(2) of this section [to provide warranty terms on the warrantor's website]), or [¶] (2) Furnishing it upon request prior to sale (including through electronic or other means, if the warrantor has elected the option described in paragraph (b)(2) of this section [to provide the warranty terms on the warrantor's website]) and placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request."

21

piano so long as it is shipped at the purchaser's expense to the factory . . .  [¶]  . . . [T]he bill is designed to promote understanding.  Far too frequently, there is a paucity of information supplied to the consumer about what in fact is offered him in that piece of paper proudly labeled "warranty."'"  (40 Fed.Reg. 60168 (Dec. 31, 1975).)

## B.  UCL Statutory Scheme

"Unfair competition" under the UCL includes "any unlawful, unfair or fraudulent business act or practice." (§ 17200.)  The scope of the UCL is broad, covering anything that can be considered a business practice but is prohibited by law.  (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).)  "Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' [Citations.]" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*).)

Because it is written in the disjunctive, section 17200 encompasses three forms of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.  (*Cel–Tech, supra,* 20 Cal.4th at p. 180.)  "The UCL's 'unlawful' prong 'borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.' [Citation.] "'[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for [an]

22

. . . 'unlawful' [prong] violation.'" [Citation.]" (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1155.)

## C. Standing under the UCL

Prior to 2004, "any person acting for the interests of itself, its members or the general public" had standing to bring a UCL action. (Former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198; *Hansen v. Newegg.com Americas, Inc.* (2018) 25 Cal.App.5th 714, 723 (*Hansen*).) Proposition 64 amended section 17204 to limit private standing to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204, as amended by Prop. 64, § 3, as approved by voters, Gen. Elec. (Nov. 2, 2004).)

The intent of Proposition 64 was to prohibit private attorneys from filing lawsuits "on behalf of 'clients who [had] not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant' ([Prop. 64 § 1,] subd. (b)(3)) and had not 'been injured in fact' (*id.*, subd. (b)(2)) as a way of 'generating attorney's fees without creating a corresponding public benefit' (*id.*, subd. (b)(1)). In short, voters focused on curbing shakedown suits by those who had never engaged in *any* transactions with would-be defendants. [Citation.]" (*Kwikset, supra,* 51 Cal.4th at p. 335, fn. 21.) "While the voters clearly intended to restrict UCL standing, they just as plainly preserved standing for those who *had* had business

23

dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices. (Prop. 64, § 1, subds. (b), (d); see § 17204.)" (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 788.)

To determine whether a plaintiff has standing to bring a private UCL action, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset, supra,* 51 Cal.4th at p. 322.)[4]

_____

[4] As used in section 17204, "injury in fact" is a legal term of art that incorporates the established meaning under federal law. (*Kwikset, supra,* 51 Cal.4th at p. 322.) Economic injury, in the form of lost money or property, is a classic type of injury in fact (*id.* at pp. 323–324), and a negligible identifiable injury is sufficient for federal standing purposes (*id.* at pp. 324–325). The standing requirements of section 17204 are stricter than federal standing requirements, since the plaintiff's injury in fact must involve lost money or property. (*Id.* at pp. 323–324.) "[A] party who has lost money or property generally *has* suffered injury in fact." (*Id.* at p. 322.) The question of whether the plaintiff has shown injury in fact is incorporated into the determination of whether the plaintiff has shown an economic injury sufficient to constitute an injury in fact. (*Id.* at p. 323.) "If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact. Because the lost money or property requirement is more difficult to satisfy than that of injury in fact, for courts to

## D. Relevant Case Law

In *Kwikset, supra*, 51 Cal.4th 317, the plaintiffs brought an action under the UCL alleging defendant Kwikset falsely marketed locksets as "Made in U.S.A." (*Kwikset, supra*, 51 Cal.4th at p. 317.)  The claim was alleged under the unlawful prong of the UCL, but the predicate statutory violations concerned misrepresentation and deception.  (*Id.* at p. 327, fn. 9.)  When a UCL claim is based on a fraud theory, the type of causation required to demonstrate standing is "'actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions' ([*In re Tobacco II Cases* (2009) 46 Cal.4th 298,] 306)." (*Kwikset, supra*, 51 Cal.4th at pp. 326–327.)  The plaintiffs did not allege the locksets that they received were overpriced or defective, but alleged that they relied on the false representation that the locksets were made in the United States and would not have purchased them if the place of origin had not been misrepresented.  (*Id.* at pp. 319–320.)  The California Supreme Court held that

___

first consider whether lost money or property has been sufficiently alleged or proven will often make sense.  If it has not been, standing is absent and the inquiry is complete.  If it has been, the same allegations or proof that suffice to establish economic injury will generally show injury in fact as well (*ibid.*), and thus it will again often be the case that no further inquiry is needed." (*Id.* at p. 325.)

"plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue." (*Id.* at p. 317.)

The *Kwikset* court explained, "For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same:  the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately.  This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent." (*Kwikset, supra*, 51 Cal.4th at p. 329.)

In a UCL case based on a fraud theory, an allegation that the party would not have bought the product but for the misrepresentation is sufficient to allege causation. (*Kwikset, supra*, 51 Cal.4th at p. 330.)  "From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product.  That

increment, the extra money paid, is economic injury and affords the consumer standing to sue." (*Ibid.*)

The defendant argued the plaintiffs had no economic injury, and therefore lacked standing, because they received the benefit of their bargains. (*Kwikset, supra,* 51 Cal.4th at p. 332.) Without deciding whether a party who actually receives the benefit of his or her bargain may lack standing in another case, the Supreme Court found the plaintiffs in *Kwikset* did not receive the benefit of their bargain, because the misrepresentation about the country of origin may have been a material part of the bargain. (*Ibid.*) The plaintiffs bargained for products made in the United States, but received products that were not. (*Ibid.*) A misrepresentation is material if "'"a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" . . . .' [Citations.]." (*Id.* at pp. 332–333.) In regulating the marketing of merchandise as made in the United States, the Legislature made clear that the country of origin is a material consideration to reasonable people. (*Id.* at p. 333.) The materiality of a misrepresentation is generally a question of fact, which was not appropriate to resolve in that case on demurrer. (*Ibid.*)

In contrast, in *Demeter v. Taxi Computer Services, Inc.* (2018) 21 Cal.App.5th 903 (*Demeter*), plaintiff Michael Demeter purchased a membership to access the defendant's talent listing services. Demeter filed a class action lawsuit, including a UCL claim, alleging that the defendant failed to

obtain a bond or provide a written contract satisfying the requirements of California's talent services law.  (*Id.* at pp. 906–907.)  The defendant brought a motion for summary judgment on the ground that the plaintiff could not show he had suffered an economic injury; Demeter was unaware of the bond requirement, did not rely on the bond requirement when he purchased the membership, and he received the services that he expected.  (*Id.* at p. 908.)  Demeter argued that he would not have paid the membership fee if he had known the company was not complying with legal requirements.  (*Id.* at p. 909.)

This appellate court found that although Demeter showed he spent money to purchase the membership, the evidence did not establish that he suffered an economic injury as a result of the unlawful practices alleged. (*Demeter*, *supra*, 21 Cal.App.5th at p. 915.)  There was no evidence that the failure to include certain contract terms required by the talent services law had caused him to pay for the membership. (*Ibid*.)  Because the plaintiff did not know about the bond requirement when he purchased the membership and did not expect the defendant to have posted a bond, he could not establish the unlawful practices had caused him to suffer an economic injury.  (*Ibid*.)

### E.  Loss of Money or Property

"'There are innumerable ways in which economic injury from unfair competition may be shown.  A plaintiff may (1)

28

surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. [Citation.]' (*Kwikset*[], *supra*, 51 Cal.4th at p. 323.) The foregoing list is not exhaustive and the notion of 'lost money' under the UCL is not limited. [(*Ibid.*)] Moreover, 'the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact' and 'it suffices . . . to "'allege[] some specific, "identifiable trifle" of injury.'" [Citations.]' (*Id.* at pp. 324–325, fn. omitted.) "'"The basic idea . . . is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."' [Citations.]' (*Id.* at p. 325, fn. 7.)" (*Law Offices of Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544, 561.)

In this case, Zamora declared that she would not have purchased the WaterPik product if she had known the warranty featured on the front of the package was limited to replacement parts. Her evidence, if found to be credible by a trier of fact, establishes a loss of money sufficient to constitute injury in fact. She believed that she was purchasing a product with a full replacement warranty, when in fact, the product she got had a limited warranty. A consumer who paid money to buy a product from the

29

defendant and subsequently made a warranty claim to the manufacturer is not the type of plaintiff that the UCL standing requirements were designed to bar, who did not view the defendant's advertising or have business dealings with the defendant.

CVS argued that Zamora did not suffer an economic injury, because she received the benefit of her bargain; WaterPik provided a full replacement for her product when she made a warranty claim. This argument is a red herring, because Zamora's loss did not depend on whether she made a warranty claim or the outcome of the claim. Even if Zamora had not made any warranty claim, she lost money spent on a product that she would not have purchased if she had been given an opportunity to read the warranty terms before making her purchase and discovered the warranty was limited. Although WaterPik chose to provide a full replacement when she made a claim, there is no evidence that WaterPik changed its warranty terms or that the replacement product came with a full warranty. Zamora still received a product with a limited warranty, and if she had made a second claim, WaterPik could elect to provide parts only.

The amount that Zamora paid for a product that she would not have purchased if she had known the limited warranty terms was an economic injury sufficient to establish injury in fact.

### E. Causation

"In order to pursue a UCL claim, the plaintiff must show that the practices that it characterizes as unlawful caused it to suffer an actual economic injury." (*Two Jinn, Inc. v. Government Payment Service, Inc.* (2015) 233 Cal.App.4th 1321, 1333 (*Two Jinn*).) "When a UCL action is based on an unlawful business practice, as here, a party may not premise its standing to sue upon injury caused by a defendant's lawful activity simply because the lawful activity has some connection to an unlawful practice that does not otherwise affect the party. In short, there must be a causal connection between the harm suffered and the unlawful business activity. That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." (*Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1099, fn. omitted (*Daro*).)

Causation is typically a question of fact that cannot be resolved in summary judgment proceedings. (*Lawrence v. La Jolla Beach & Tennis Club, Inc.* (2014) 231 Cal.App.4th 11, 33 (*Lawrence*).) "'The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion.' (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1687.)" (*Lawrence, supra,* 231 Cal.App.4th at p. 33.) "A number of courts have found, as a matter of law, that a defendant is not liable for an injury only distantly connected to defendant's conduct."

31

(*Novak v. Continental Tire North America* (2018) 22 Cal.App.5th 189, 198.)

The evidence in this case showed Zamora read the information on the front of the WaterPik package that the product featured a three-year warranty. She believed the warranty to be a full replacement warranty, and did not notice very fine print on the underside of the box stating that the warranty was limited. The text of the warranty was not posted in proximity to the product, nor were there signs that the warranty was available for her to review before purchasing the product. She declared that she would have seen a sign about warranties, requested to read the product warranty, and not purchased the product when she learned the warranty was limited to replacement parts. We cannot say the causation chain in this case is too speculative or remote as a matter of law, when the very purpose of the federal warranty law is to provide information about warranty terms to consumers prior to making purchases, and the harm it seeks to avoid is surprising consumers with unfavorable warranty terms and limitations after the purchases are complete. A triable issue of fact exists as to whether CVS's failure to comply with federal law by making warranties available for review was a substantial factor in causing Zamora to purchase a product that she otherwise would not have bought.

## Injunctive Relief

CVS contends Zamora cannot obtain injunctive relief under the UCL, because there is no likelihood of harm against her in the future, since she is aware now of her right to review a written warranty before making a purchase. This analysis is incorrect.

Remedies under the UCL are generally limited to injunctive relief and restitution. (*In re Tobacco II Cases*, *supra*, 46 Cal.4th at p. 312.) "Injunctions are 'the primary form of relief available under the UCL to protect consumers from unfair business practices,' while restitution is a type of 'ancillary relief.' [Citation.]" (*Kwikset*, *supra*, 51 Cal.4th at p. 337.) "'[T]he equitable remedies of the UCL are subject to the broad discretion of the trial court. [Citation.] The UCL does not *require* "restitutionary or injunctive relief when an unfair business practice has been shown. Rather, [section 17203] provides that the court '*may* make such orders or judgments . . . as may be necessary to prevent the use or employment . . . of any practice which constitutes unfair competition . . . or as may be necessary to restore . . . money or property.'"' (*Zhang*[ *v. Superior Court* (2013)] 57 Cal.4th [364,] 371.)" (*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 790.)

The remedies available for a violation of the UCL include "public injunctive relief, i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. (*Cruz*

33

*v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315–316 (*Cruz*); *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1077 (*Broughton*).)" (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 951 (*McGill*).)

Proposition 64's amendment of the standing requirements for an action under the UCL "do not preclude a private individual who has 'suffered injury in fact and has lost money or property as a result of' a violation of the UCL or the false advertising law (Bus. & Prof. Code, §§ 17204, 17535)—and who therefore has standing to file a private action—from requesting public injunctive relief in connection with that action. A person who meets these requirements is 'fil[ing]' the 'lawsuit[]' or 'action[]' on his or her own behalf, not 'on behalf of the general public.' (Prop. 64, § 1, subds. (b)(4)), (f); see [Historical and Statutory Notes, 4D West's Ann. Bus. & Prof. Code (2008 ed.) foll. § 17203,] p. 409.) This remains true even if the person seeks, as one of the requested remedies, injunctive relief 'the primary purpose and effect of' which is 'to prohibit and enjoin conduct that is injurious to the general public.' (*Broughton, supra,* 21 Cal.4th at p. 1077.)" (*McGill, supra,* 2 Cal.5th at p. 959.)

Moreover, a plaintiff bringing a private action under the UCL does not have to comply with the statutory requirement for class actions in order to seek an injunction against future wrongful business practices that will injure the public. (*McGill, supra,* 2 Cal.5th at p. 960.) "Indeed, imposing this requirement would largely eliminate the ability of a private plaintiff to pursue such relief, because

34

class certification requires 'the existence of both an ascertainable class and a well-defined community of interest among the class members' (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913), and "'the general public . . .'" . . . fails to meet' this requirement (*Czap v. Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1, 6)." (*McGill, supra*, 2 Cal.5th at p. 960.)

The trial court's broad equitable authority to enjoin conduct that violates the UCL is not unlimited. (*In re Tobacco Cases II, supra*, 240 Cal.App.4th at p. 802.) In order to grant injunctive relief under the UCL, "there must be a threat that the wrongful conduct will continue. 'Injunctive relief will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur, i.e., where the defendant voluntarily discontinues the wrongful conduct.' [Citations.]" (*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 702.)

In this case, Zamora sought an injunction ordering CVS to comply with federal regulations to provide warranty information prior to sale in order to prevent future injury to the general public. As discussed above, triable issues of fact exist as to standing. If the trier of fact determines that Zamora established an economic injury as a result of CVS's failure to comply with the federal warranty laws, then she has standing to maintain her action seeking an injunction on behalf of the general public. There is no evidence that CVS is complying with the warranty requirements, so the threat

35

remains that the wrongful conduct will continue and members of the general public will not be notified of their right to review warranties prior to making purchases.

## DISPOSITION

The judgment and the order granting summary judgment are reversed. The trial court is directed to enter a new and different order denying the motion for summary judgment. Appellant Osiris Zamora is awarded her costs on appeal.

MOOR, J.

We concur:

RUBIN, P. J.

KIM, J.