Filed 10/7/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| FOREST LAWN MEMORIAL-PARK ASSOCIATION et al., | E076549 |
| Petitioners, | (Super.Ct.No. PSC1801596) |
| v. | OPINION |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | |
| Respondent; | |
| DAISY RAMIREZ et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; Petition for writ of mandate granted. David M. Chapman, Judge.

Koeller, Nebeker, Carlson & Haluck, Gary Hoffman, Nicki K. Orr, Maria K. Plese, and James R. McDaniels; Hayes, Scott, Bonino, Ellingson, Guslani, Simonson & Clause, Mark G. Bonino, Dara M. Tang for Petitioners.

No appearance by Respondent.

Law Offices of Andy Basseri and Andy Basseri, for Real Party in Interest, Daisy Ramirez.

1

A plaintiff obtained a witness declaration to support her opposition to the defendants' summary judgment motion. At the witness's deposition, she disavowed the declaration, testified as to her lack of knowledge of the relevant matter, and explained that she signed the declaration due to pressure from plaintiff's counsel. The trial court nevertheless denied the summary judgment motion on the ground that the declaration, considered in isolation, created a triable issue of fact precluding summary judgment. We hold that the declaration should not be considered in isolation in determining whether there is foundation in personal knowledge for its contents, but rather any evidence in the record can and should be considered. We further find the record here compels the conclusion that the witness's repudiated statement lacked foundation in personal knowledge. The trial court therefore erred in denying summary judgment.

I

BACKGROUND

Plaintiff and real party in interest Daisy Ramirez sued defendant Joshua Brown and others for negligence in causing a March 11, 2017, auto accident on Grapefruit Boulevard in Riverside. The issue in this writ proceeding is whether petitioners Forest Lawn Memorial-Park Association and Forest Lawn Mortuary (together, Forest Lawn) can be held vicariously liable for damage caused by Brown's negligence. If they cannot be, they merit a writ of mandate ordering summary judgment in their favor.

Brown was a temporary receptionist working at Forest Lawn upon being placed there by a staffing agency, Proper Solutions. He was traveling to work at the time of the

2

accident. Under the "'going and coming rule,'" employers generally are not liable for driving accidents during their employees' commutes. (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 961.) Under the "required vehicle" exception to that rule, however, an employer may be liable where an employee is expressly or impliedly required to use their vehicle for work. (*Savaikie v. Kaiser Foundation Hospitals* (2020) 52 Cal.App.5th 223, 232; see *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 723). Forest Lawn's summary judgment motion turns on whether Ramirez created a triable issue as to whether the required vehicle exception applied.

Forest Lawn's evidence demonstrated that Brown was not required to use his vehicle for work. Brown testified that he worked at Forest Lawn in a probationary period for less than two months until he was "let go" after his traffic accident. He was a "front room receptionist," "took care of the obituaries," and prepared decedents' clothing for the mortuary, along with other office and housekeeping tasks. He never ran any type of errand for Forest Lawn. He was never asked to pick up supplies or drop things off. He never drove vehicles for Forest Lawn, nor was he asked to keep track of his mileage, nor reimbursed for gas. Brown's supervisor, Matthew Bass, also testified as to Brown's office duties during the two months that Brown worked as a temporary receptionist at Forest Lawn and averred that "[a]s a receptionist, [Brown] was not requested or required to ever use his car for any aspect of his work."

In opposing summary judgment, Ramirez submitted a three sentence August 21, 2020 declaration from a witness named Carolyn Scott. The record contains no other

3

evidence connecting Scott to this case. Scott stated that she was an employee of "Jensen's Florists" in Palm Springs, where she had worked for many years. She stated that between February and March 2017, she witnessed "an employee of Forest Lawn, named Joshua Brown[,] that came into Jensen's Florists on numerous occasions with his car to pick up flowers on behalf of Forest Lawn." She stated that this was done during work hours. She signed under penalty of perjury.

After the trial court denied Forest Lawn's request to depose Scott, Forest Lawn responded with a declaration from Brown reaffirming his testimony that he "never performed any errands for Forest Lawn" and stating that he had "never purchased or picked up flowers at any Jensen's florists" and has "never met Carolyn Scott."

In its first of two summary judgment rulings, the court on September 16, 2020, overruled Forest Lawn's foundation objection to Scott's declaration and denied the motion because the Scott declaration provided "some evidence that Mr. Brown used his vehicle to pick up flowers at Jensen's."

Twelve days after that summary judgment ruling, the parties deposed Scott, who repudiated her declaration. She testified that the only thing true in her declaration was her name. She stated that she was not an employee of "Jensen's Florists," but rather customer service manager of "Jensen's Finest Foods," a fairly large grocery store with a floral department. She runs the front line of cashiers and takes customer complaints. She testified "I don't even run that Floral Department. I have nothing to do with that Floral Department. I just cover it when they're on their breaks and lunches, the phone calls." In

4

the same manner, she covers the bakery, deli, and grocery departments when staff are on breaks.

Scott also stated that it is not true that she witnessed a Forest Lawn employee named Joshua Brown pick up flowers on numerous occasions. She does not know any employee of Forest Lawn. She does not know if any people from Forest Lawn have ever come to Jensen's to pick up flowers. At the time she signed the declaration, and at the present, she had no idea whether she has ever met anyone named Joshua Brown. She testified that she told plaintiff's counsel that "if I did know Joshua Brown, it would be because he worked and delivered flowers from Jensen's Floral Department but not Forest Lawn." That is, Joshua Brown "might have been one of our delivery drivers."

Scott explained how she came to sign the declaration. Plaintiff's counsel reached her when she answered the phone for the floral department manager during his lunch break. When counsel asked if she knows Joshua Brown (providing his race, build, and age range), she told him that several young men deliver for the floral department and that might be how she knows him. Counsel thereafter called her at work 15 to 20 times with counsel's assistant "sending over on my phone something for me to sign." She told counsel she can't keep talking to him, but "he would call right back and right back and right back, the same day, right back, several times." She testified that she told him she had been reprimanded for all the calls, but counsel "was really pushing me into. . . doing whatever it is I needed to do." Plaintiff's counsel brought her the declaration at work and she signed it when he was there for "just a few minutes." He did not go over the

declaration with her.  She did not know the declaration would be submitted in a lawsuit, and he did not explain she was taking an oath under penalty of perjury that the statements were true.  She testified that she signed the declaration because she "was pressured . . . I just wanted to sign and get him out of there because my bosses were really looking."  She testified that the only reason she signed was "to get him out of there."[1]

After Scott's deposition, in connection with a separate summary judgment motion filed by Proper Solutions, the staffing agency that placed Brown, the trial court issued a tentative ruling asking the parties to address the legal significance of the fact that at her deposition Scott "recanted virtually all of the content of her declaration," noting that the declaration was relied upon by the court in denying Forest Lawn's summary judgment motion.  After supplemental briefing on the Scott deposition, the trial court granted summary judgment to Proper Solutions.

Meanwhile, Forest Lawn filed a renewed motion for summary judgment, providing Scott's declaration and deposition.  Forest Lawn objected to the admissibility of the entire declaration and each of its statements.  The trial court set a new summary judgment hearing.

---

[1] After Scott's deposition, a law firm representing Ramirez filed a notice of disassociation of counsel, leaving Andy Basseri—the lawyer who obtained Scott's declaration and questioned Scott at her deposition on behalf of Ramirez—as sole counsel for Ramirez.  In a later declaration, filed in opposition to an award of attorney fees against Ramirez, one of the disassociated firm's lawyers stated that all contacts with Scott had been through Basseri and the lawyer was "totally shocked" by Scott's deposition testimony about Basseri's efforts to obtain her declaration.  We, too, are concerned by the behavior Scott described.  For present purposes, however, we need not decide whether Basseri in fact violated the Rules of Professional Conduct.

6

At the hearing, the court was "of the opinion that the law is not at all as clear as one might hope" as to how it should consider Scott's deposition. The court denied Forest Lawn's objection that the declaration lacked foundation in Scott's personal knowledge of the matters in it. In doing so, the trial court looked at the declaration "in and of itself," making its ruling "based . . . only on the declaration" and finding that there was nothing "within the four corners of the declaration precluding its admission."

With Scott's declaration admitted, the court found it impermissible for it to weigh the credibility of the statements in Scott's declaration and deposition. The court stated that "while this declaration may lack credibility" it could not find that it was facially incredible as a matter of law. Other than that bar on rejecting the declaration, the court stated that it might well conclude "that the deposition testimony was substantially more persuasive." The court indicated that Scott's declaration was the only item that created an issue of triable fact.

II

DISCUSSION

We must decide whether Ramirez created a triable issue for summary judgment purposes with Scott's statement in her three sentence August 2020 declaration, which she disavowed in her September 2020 deposition. Only if Scott's declaration was properly considered as admissible evidence could it raise a triable issue of fact. We conclude the declaration is not admissible evidence because it lacks foundation in personal knowledge.

7

Although a court does not weigh the evidence at summary judgment, "it does consider the competency of the evidence presented." (*Mackey v. Trustees of California State* University (2019) 31 Cal.App.5th 640, 656.) "A party may not raise a *triable* issue of fact at summary judgment by relying on evidence that will not be admissible at trial." (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 543.)

A motion for summary judgment and its opposition may rely on hearsay presented through affidavits and deposition testimony. (Code Civ. Proc., § 437c, subd. (b)(1), (b)(2).) Such affidavits or declarations "shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations." (Code Civ. Proc., § 437c, subd. (d).) The testimony of a non-expert witness "concerning a particular matter is inadmissible unless he has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) If objected to, "such personal knowledge must be shown before the witness may testify concerning the matter." (*Ibid.*) Crucially for our purposes, whether a witness has personal knowledge of a matter "may be shown by any otherwise admissible evidence, including his own testimony." (Evid. Code § 702, subd. (b).)

We agree with Forest Lawn that Ramirez did not show a foundation of personal knowledge for Scott's statements in her declaration. A statement lacks foundation "*if no jury could reasonably find*" that the witness has personal knowledge of the matter. (*People v. Johnson* (2018) 6 Cal.5th 541, 583 (quoting *People v. Anderson* (2001) 25

8

Cal.4th 543, 573.) From the evidence presented for the renewed summary judgment hearing, no jury could reasonably find Scott had the requisite personal knowledge.

As noted, Scott stated in her declaration that "between February 2017 and March 2017 I witnessed an employee of Forest Lawn, named Joshua Brown[,] that came into Jensen's Florists on numerous occasions with his car to pick up flowers on behalf of Forest Lawn . . . . during work hours." The stated basis for this statement was only that Scott was an "employee of Jensen's Florists"; the declaration provided no other reason to establish how she might know the information to which she was testifying. In many contexts, a witness's assertion that she witnessed something readily provides adequate foundation for her testimony. Here, however, for Scott to have personal knowledge of the matter she asserted, she would have to be in a position at a florist to know and remember for three-and-a-half years (a) the name of a person picking up flowers, (b) the company that person worked for, and (c) that the person arrived in a car during work hours. Were Scott testifying at trial, the bare assertion in her declaration would likely be inadequate to overcome an objection for lack of foundation; a court would demand more testimony from a live witness as to how she knew and recalled the information.

When the trial court ruled on Forest Lawn's *initial* summary judgment motion, Scott's deposition had not yet occurred. At that time, the trial court likely had discretion to admit Scott's declaration, as it asserts a general basis for personal knowledge as a florist's employee and contains no reason for a jury to doubt the assertion. "[E]videntiary questions at summary judgment "'are subject to the overarching principle that the

9

proponent's submissions are scrutinized strictly, while the opponent's are viewed liberally.""" (*Mackey v. Board of Trustees of California State University*, *supra*, 31 Cal.App.5th at p. 657.)

We need not, however, decide the stand-alone admissibility of Scott's cursory declaration, because when the trial court ruled on Forest Lawn's *renewed* summary judgment motion, the record included both Scott's declaration and deposition. In overruling Forest Lawn's objection to the declaration's foundation at that time, the trial court acted "based . . . only on the declaration" and found nothing "within the four corners of the declaration precluding its admission."

Because the trial court's approach of limiting its consideration of foundation to the declaration itself was a construction of the summary judgment statute, our review of it is de novo. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527.) We hold that because any admissible evidence may bear on a witness's personal knowledge for a statement (Evid. Code, § 702, subd.(b)), the trial court erred in determining it could look only to the declaration in isolation in considering whether there is foundation for it.

Under Evidence Code section 702, subdivision (b), any admissible evidence can be considered in determining whether a witness has personal knowledge for a statement. We see no reason why the evidence considered in evaluating a declaration's foundation should be limited to the document's four corners. Consider if, at the initial summary judgment hearing, the trial court had been inclined to think the declaration's foundation was inadequate. The trial court might grant Ramirez a continuance to obtain a

10

supplementary declaration from Scott to demonstrate her personal knowledge of the matter in her first declaration. That supplementary evidence of course could help establish foundation for her testimony. Here, in fact, if Scott had personal knowledge of the matters in her declaration, her deposition testimony might have helped plaintiff to demonstrate that.

Instead, however, Scott's deposition established the lack of foundation for her statements in the declaration. Scott's deposition testimony squarely repudiated her declaration statements as false even when she signed it. More important to its admissibility, however, her testimony explained that she lacked any personal knowledge that could support her declaration statements. She testified that she was not an employee of "Jensen's Florists," or of any florist. She worked for a large grocery store called Jensen's, and she was the customer service manager. Ramirez has not disputed that the declaration was false in this manner. Ramirez's attorney, who had traveled to the store to get Scott's signature, instead argued that the fact that Scott did not work for a florist was "just a technicality." Not so. Scott's testimony established that her connection to the store's floral department was merely that she answered the phones for various store departments when employees were on their breaks. Her testimony about her employment thus was more than a technicality; it demonstrated that she had no personal knowledge that, during a two-month period about three-and-a-half-years earlier, a person named Joshua Brown, who was employed by Forest Lawn and who arrived by car during work hours, had repeatedly made floral pick-ups at the floral department of her store.

11

Indeed, Scott's testimony established that she has no basis for testifying as to whether *anyone* from Forest Lawn had *ever* been to her store. She was asked if she knew anyone from Forest Lawn and responded, "No one, no. I have a granddaughter that's buried there here in Cathedral City." She does not know if any people from Forest Lawn have ever come to Jensen's to pick up flowers. The people she might know, she testified, are delivery drivers employed *by her store*, not persons who work for Forest Lawn. She testified that this is what she told Ramirez's counsel regarding how she might know someone named Joshua Brown.

Importantly, when Ramirez's counsel questioned Scott at her deposition, he established no foundation for the statements in her declaration. He did not attempt to show any way in which she could know the matters in the declaration. He instead attempted to establish that Scott had told him the substance of the declaration. The testimony he elicited, however, only confirmed Scott's deposition account. That is, Ramirez's counsel did not even attempt to establish that she told *him* that she thought Brown worked for Forest Lawn as opposed to working for her store. Nor did he attempt to establish that he asked her, or she told him, *anything* about Forest Lawn. He also did not attempt to establish that Scott told him that Brown came to pick up flowers with his car during work hours. The only thing that Ramirez's counsel asked and established that Scott told him was that "an individual named Joshua Brown" had "picked up flowers, and things of that nature." This is consistent with Scott's testimony that she told Ramirez's counsel that she might know Brown as a delivery driver for Scott's store. Ramirez's

12

counsel did not establish that Scott told him anything else that might provide a foundation for the declaration statements.

Scott testified as to how she ended up signing the declaration. After plaintiff's counsel called her at work 15 to 20 times, she felt he was pushing her into doing what he needed. She said she told him she had gotten reprimanded for all the calls, but counsel "was really pushing me into . . . doing whatever it is I needed to do." She testified she signed the declaration when plaintiff's counsel brought it to her at work and was there for "just a few minutes." He did not go over the declaration with her. She did not know the declaration would be submitted as part of a lawsuit, and he did not explain to her she was taking an oath under penalty of perjury that the statements were true. She testified that she signed the declaration because she "was pressured . . . I just wanted to sign and get him out of there because my bosses were really looking, you know." She testified that the only reason she signed was "to get him out of there."

On these facts, we do not believe a jury could reasonably find that Scott had personal knowledge that might support her declaration statement that a Forest Lawn employee named Joshua Brown came to the store three-and-a-half years earlier to pick up flowers with his car during work hours. We stress that the required foundation for personal knowledge is not high. It is well below what is necessary for a determination by the court that a statement is credible. The outcome here might be different if there was any independent reason to credit Scott's declaration statement; if the declaration had occurred close to March 2017 but the deposition had not; if the matters involved were

ones that one could reasonably know about and recall; if some more meaningful foundation for the statements had been provided in her declaration; if she had not provided an affirmative account of how she came to sign the declaration that she later disavowed; or if she was shown to have some reason to falsely renounce her declaration. We instead have a thoroughly repudiated declaration with deposition testimony explaining why its very basis was incorrect (including that Scott does not even work for a florist), as well as testimony explaining why the untrue declaration was signed.

Ramirez proposes that the Scott declaration's admissibility as impeachment evidence creates a triable issue. The idea here is that if Scott were called as a witness at trial and testified contrary to her declaration, Ramirez could seek to admit her declaration under Evidence Code section 1235. Under that section, the prior inconsistent statement is admissible "not only to impeach [Scott's] credibility, but also to prove the truth of the matters asserted therein." (*People v. Williams* (1976) 16 Cal.3d 663, 666.) Thus, Ramirez claims, the declaration contains a prior inconsistent statement admissible for impeachment purposes despite the rule against hearsay, and therefore also as substantive evidence.

For two reasons, the possibility of trial impeachment does not change our view that Scott's declaration cannot create a triable issue. First, under Evidence Code section 1235, impeachment evidence without foundation may be excluded at trial. (*People v. Jones* (2013) 57 Cal.4th 899, 956; *People v. Cooks* (1983) 141 Cal.App.3d 224, 272-273.)

14

Second, Evidence Code section 1235 does not apply to a summary judgment determination. The section's commentary states that prior inconsistent hearsay statements may be admitted for their truth at trial because the trier of fact may evaluate a live witness's credibility in testifying about both the prior statement and the current inconsistent statement. (*People v. Williams*, *supra*, 16 Cal.3d at p. 668.) Thus, "[Evidence Code] section 1235 applies at trial only." (*Ibid*.)

In contrast, as to declarations submitted at the summary judgment stage, Evidence Code section 1202 governs. (See *People v. Williams*, *supra*, 16 Cal.3d at p. 668 [Evidence Code Section 1202 "deals with the impeachment of a declarant whose hearsay statement is in evidence as distinguished from the impeachment of a witness who has testified"].) Under Evidence Code section 1202, prior inconsistent statements may not be admitted for their truth, but only for the purpose of attacking the credibility of the declarant. As the comment to Evidence Code section 1202 states in pertinent part, "[Evidence Code section 1235] provides that evidence of inconsistent statements made by a trial witness may be admitted to prove the truth of the matter stated. No similar exception to the hearsay rule is applicable to a hearsay declarant's inconsistent statements that are admitted under [Evidence Code] Section 1202." Under Evidence Code section 1202, then, "the hearsay rule prohibits any such statement from being used to prove the truth of the matter stated." (Evid. Code, § 1202, comment.) Thus, pursuant to Evidence Code section 1202, at summary judgment a trial court may find a witness's prior

inconsistent statement sufficient for a jury to find her not credible and disregard some or all of her testimony.

Here, admitting the declaration under Evidence Code section 1202 cannot help Ramirez because, even if all or some of Scott's deposition testimony were disregarded, nowhere is there substantive evidence that demonstrates her declaration has a foundation in personal knowledge. If admitted only under Evidence Code section 1202, Scott's declaration could not be used to prove the truth of the matters stated, and could not alone create a triable issue. Of course, at summary judgment (unlike at trial) hearsay is generally admissible, and, given proper foundation under Evidence Code section 702, *any* declaration statement (inconsistent or not) could be considered as evidence of the matters stated, but foundation is lacking to admit Scott's declaration, as discussed above.

Finally, we will address an argument that is a focus of Forest Lawn's briefing on appeal in order to explain why it is not dispositive here. In addition to arguments based on lack of foundation, Forest Lawn invokes the so-called *D'Amico* rule, asserting that it "is well-established in California that a declaration must be disregarded if in conflict with deposition testimony." (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 (*D'Amico*); see *Ahn v. Kumho Tire U.S.A. Inc.* (2014) 223 Cal.App.4th 133, 136 [referring to "*D'Amico* rule"].) On this basis, too, according to Forest Lawn, Scott's declaration is insufficient to raise a triable issue of fact. In our view, Forest Lawn states the *D'Amico* rule too broadly.

16

The *D'Amico* rule is about the evidentiary strength of admissions by a party and applies "when discovery has produced an admission or concession [by] the party opposing summary judgment." (*D'Amico*, *supra*, 11 Cal.3d at p. 21.) Those admissions "have a very high credibility value" and "should receive a kind of deference not normally accorded evidentiary allegations in affidavits." (*Id.* at p. 22.) During civil discovery in *D'Amico*, the state medical board admitted the legitimacy of osteopathic training for medical providers. (*Id.* at p. 23.) Due to those concessions, our Supreme Court held, testimony that "might show differences of emphasis and quality" between osteopathic training and other medical training could not be used in the case to create a triable issue. (*Id.* at p. 24.) *D'Amico* indicates that its rule applies to prioritize an admission in a deposition in particular, as the Supreme Court relied on a case that it characterized as stating that where "'there is a clear and unequivocal admission by the plaintiff, himself, in his deposition'" a triable issue was not created by an affidavit by the plaintiff that contradicted it. (*Id.* at p. 21 [quoting *King v. Andersen* (1966) 242 Cal.App.2d 606, 610].)

There are two reasons that the *D'Amico* rule is inapplicable here. First, in our view, it applies to deposition and declaration statements by only a *party* to a case. It does not apply to third-party witnesses like Scott because our Supreme Court grounded the rule on the value of *party* admissions in discovery. The rule is not based on a general proposition that deposition statements are favored over declaration statements for summary judgment purposes. (See *Scalf v. D.B. Log Homes, Inc.* (2005) 128

17

Cal.App.4th 1510, 1521-1522 ["Properly applied, *D'Amico* is limited to instances where 'credible [discovery] admissions . . . [are] contradicted *only* by self-serving declarations of a party. [Citations.] In a nutshell, the rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony"]; *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 460 ["The *D'Amico* rule has been characterized as "'pre-trial estoppel'"" against a party].)[2]

Second, if the *D'Amico* rule were to apply to third-party witnesses, we believe it would make sense to automatically exclude a conflicting declaration only when executed

---

[2] At least two Court of Appeal opinions apply *D'Amico* to third-party witnesses. (See *Jacobs v. Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, 1270; *Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451; see *Nunez v. R'Bibo* (1989) 211 Cal.App.3d 559, 563 [opinion cited by two preceding cases, but in which the witness's testimony was corroborated by a *party*'s deposition admission].) We disagree with this approach, as it does not follow from the principle favoring party admissions that underlies *D'Amico*.

We note that (unlike in California) every federal circuit court of appeals has some form of a "sham affidavit" rule under which "'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" (*Van Asdale v. Int'l Game Technology* (9th Cir. 2009) 577 F.3d 989, 998.) Unlike the *D'Amico* rule, the sham affidavit rule does not appear to be grounded in special deference given to party admissions, but rather in the need for "'screening out sham issues of fact'" at summary judgment. (*Ibid*.) With that rule's basis, it may apply to exclude certain declarations of non-parties that contradict their depositions. (*Adelman-Tremblay v. Jewel Cos., Inc.* (7th Cir. 1988) 859 F.2d 517, 521.) But it seems to us that making "sham" affidavit determinations could put a court in a position of making credibility determinations. Our approach here, examining Scott's declaration for whether the record establishes that a reasonable jury could find its statements based on personal knowledge, is more consistent with our evidentiary rules and a trial court's role on summary judgment, even if the approach might also naturally eliminate some "sham" declarations. (Compare *Ahn v. Kumho Tire*, *supra*, 223 Cal.App.4th at p. 136 [test for declaration admissibility under D'Amico is whether "a reasonable trier of fact could have credited counsel's explanation" for the contradiction] with *Yeager v. Bowlin* (9th Cir. 2012) 693 F.3d 1076, 1080 ["to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham"].)

*after* a deposition. As our Supreme Court described the rule, "a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses." (*Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12 [citing *D'Amico*].) A situation like the one here, where witness Scott's declaration was provided *before* her deposition, is different from the situation *D'Amico* addresses, where a party executes a declaration contradicting previous deposition testimony. In circumstances where the deposition follows the declaration, the parties may question the witness at her deposition about the earlier statements (as they questioned Scott in this case), both regarding their substance and their foundation in personal knowledge. It is possible that both a declaration statement and a later, contradictory deposition statement would admissible, leaving for the jury to determine the credibility of the statements. If a third-party witness in a deposition chooses to recant an earlier declaration statement, that statement should not automatically be inadmissible.

For these reasons, we do not rely on the *D'Amico* rule here. Instead, Forest Lawn prevails because, considering the entire record, the statement in Scott's declaration lacks foundation; based on all the evidence presented on summary judgment, even construed in the light most favorable to the Ramirez, a reasonable jury could not find that Scott had personal knowledge to support the statements in her declaration. Ramirez therefore did not demonstrate any triable issue of fact regarding whether the required vehicle exception applied, and Forest Lawn is entitled to summary judgment in its favor.

### III

### DISPOSITION

The petition for writ of mandate is GRANTED.  The trial court is directed to enter summary judgment in favor of Forest Lawn.  Forest Lawn shall recover its costs in this original proceeding.

CERTIFIED FOR PUBLICATION

<u>RAPHAEL</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>SLOUGH</u>
J.